WOLVERINE NATURAL GAS CORP. *v.* CONSUMERS
POWER CO.

MINES, AND MINERALS—NATURAL GAS—REGULATION BY PUBLIC SERV-
ICE COMMISSION—STATUTES—CONTRACTS—DISCRIMINATION.

Under statutes vesting in the public service commission the reg-
ulation of the production, purchase and sale of natural gas,
and of those engaged in the business, in order to permit the
equitable withdrawal of gas by those interested in the common
source or field of supply, for purposes of conservation, to re-
strict the daily flow or output to that end, and to prohibit
discrimination in favor of one producer in a field over an-
other, to which both plaintiff producer, one of several in the
field of supply involved, and defendant purchaser, only one of
the purchasers from such field, are subject, plaintiff could not
recover for difference between its contract's "minimum take"
and maximum allowed under commission's rulings and regu-
lations which had been taken by defendant, since to do so
would constitute an illegal discrimination in favor of plaintiff
(2 Comp. Laws 1929, § 11632 *et seq.;* Act No. 3, Pub. Acts
1939).

Appeal from Kent; Verdier (Leonard D.), J.
Submitted October 22, 1940. (Docket No. 26, Cal-
endar No. 41,118.) Decided March 11, 1941. Re-
hearing denied May 21, 1941.

Assumpsit by Wolverine Natural Gas Corporation,
a Michigan corporation, against Consumers Power
Company, a Maine corporation, for breach of con-
tract to purchase gas. From judgment for defend-
ant, plaintiff appeals. Affirmed.

*Fred C. Wetmore* (*Glenwood C. Fuller,* of
counsel), for plaintiff.

*N. B. Kelly* and *Travis, Merrick & Johnson,* for
defendant.

BUSHNELL, J.   Plaintiff, Wolverine Natural Gas
Corporation, a Michigan corporation, is a producer
of natural gas from wells situated in what is known
as the Six Lakes field in Montcalm county, Michigan.
It is the successor of Michigan Exploration Com-
pany and Gordon Oil Company, both Michigan cor-
porations.

Several producers in the Six Lakes field organized
Petroleum Transportation Company, a Michigan
corporation, in order to develop their acreage, create
a market for, collect, transport, and deliver their
gas.   Petroleum was granted a permit by the Michi-
gan public utilities commission on May 2, 1935, to
operate as a common purchaser in the Six Lakes
field.   On May 27, 1935, Petroleum entered into
identical agreements with Michigan Exploration,
Gordon, and other producers in the field for the pur-
chase of natural gas produced by these companies.
On the same day, Petroleum made an agreement
with defendant, Consumers Power Company, a
Maine corporation doing business in Michigan, for
the sale of all gas purchased by Petroleum under its
agreements with leaseholders in the Six Lakes field.
On March 27, 1936, Consumers purchased all the
capital stock of Petroleum and caused its name to be
changed to Hinton-Belvidere Natural Gas Gather-
ing Company.   Hinton-Belvidere afterwards ceased
operations in the Six Lakes field and Consumers has
since continued the operation of the business of
Petroleum and Hinton under its own name.

When the written contracts out of which the
present litigation arose were made between the
leaseholders and Petroleum and between Petroleum
and Consumers, only a few wells had been drilled
in the Six Lakes field and no orders had yet been
entered by the commission prorating the quantity
of gas to be withdrawn from the field.   Each of the
contracts with the leaseholders provided that Pe-

troleum would "take and pay for, or pay for if not taken, at least a minimum quantity of natural gas each 12 months," according to a formula specified in the contract. This "minimum-take" provision was carried over into the contract between Petroleum and Consumers.

Wolverine seeks recovery of moneys which it claims are due from Consumers by reason of its failure to take and pay for, or pay for if not taken, a certain minimum quantity of natural gas. The record is largely devoted to testimony of the most conflicting nature with respect to the method of computing this "minimum quantity." The difficulty experienced in determining this "minimum quantity" arises out of the technical factors entering into the contract formula. Some of these factors are, "ability to deliver," "proven reserve," "annual open flow," "allowable withdrawal," "ratable take," and other descriptive language peculiar to the natural gas industry. The complexity of the contract formula is evidenced by the difficulty Wolverine had in determining the amount it claimed was due. It claimed in its original declaration the sum of $37,426.00. After a recomputation at the suggestion of the court, the declaration was amended during the trial to show Wolverine's claim to be $71,339.55. Before completion of the trial, this figure was corrected and the claim was reduced to $68,222.40.

The written contracts, which are given in full in the record, are most involved. Experts who testified disagreed as to the technical interpretation of them. The trial court said:

"Either due to the inability of the parties to foresee the future developments of the field or to the fact that the person who drafted the contracts was more skillful in concealing than in revealing the intention of the parties, that part of the contract requiring a minimum take is so confusing that it has puzzled

every one concerned with this case to discover what was intended."

The various contracts are substantially identical, their differences being in the recital of the parties and schedule of leases involved.  Each contract contains the following language:

"This contract is subject to all valid laws of the State of Michigan, now or hereafter effective, and to all lawful rules, regulations, and orders of governmental agencies having jurisdiction as to the subject matter hereof."

Wolverine claims that the only limit on the amount of gas which Consumers may lawfully take annually according to the rules and regulations of the commission is 17-1/2 per cent. of the open flow of plaintiff's wells, and that this "maximum allowable withdrawal" amounts to some 40 billion cubic feet of natural gas.  Consumers says that this claim ignores the effect of Rule 13 of the commission, which limits the annual take to a pro rata amount of the total annual withdrawal from the entire field; that Wolverine wells are in a "common field" and only constitute approximately one-seventh of the open flow of that field; and, consequently, only one-seventh, and no more, of the pipe-line output of the entire field can be lawfully taken from Wolverine's wells.

Under the commission's proration orders, the lawful withdrawal from any given well constitutes a fixed percentage of the amount of gas actually taken from the entire field during the year.  Plaintiff concedes that defendant took the full pro rata amount from plaintiff's wells which was allowable on the basis of the field ratings (percentage factors) assigned by the commission to each well in the Six Lakes field.  These field ratings constitute the percentage of the actual output of the field which may be drawn from any given well in the field.  But plain-

tiff claims that the allowable withdrawal under these proration orders fell short of what defendant guaranteed to take and/or pay for under the minimum-take clause in its contracts. Wolverine computes the "minimum take" according to the contract formula as 999,449,000 cubic feet. Consumers took and paid for 544,633,000 cubic feet during the year from August 1, 1936, to July 31, 1937. The quantity not taken and for which Wolverine claims payment under the terms of the contract is 454,816,000 cubic feet. It is admitted that all that Consumers could legally take under the proration orders of the commission was 544,633,000 cubic feet. However, plaintiff claims that the allowable withdrawal, even under the proration orders, could have been increased if defendant had raised the output of the entire field. It is contended that a sufficient increase in the output of the entire field would have raised the pro rata take from plaintiff's wells to a point where defendant could have fulfilled its minimum guarantee. In reply to this contention defendant asserts in its supplemental argument and brief:

"It is true that proration does not prevent a larger take from the field and if two common purchasers could agree that each should take more gas, the result would be a larger take from the field *but one common purchaser alone cannot raise the take from the field over a period of time,* for it is limited to its pro rata share of the total production and if it takes more than its share one month, it must take less than its pro rata share the next month, provided the other common purchaser takes the same amount both months.

"The fallacy of plaintiff's argument lies in assuming that Consumers Power Company could take at will from all of the wells in the field; 45 per cent. of these wells are under contract to Grand Rapids Gas Light Company [another common purchaser in

the field] and Consumers Power Company could take no gas from such wells without the consent of that company.''

The controlling statutes with respect to the contracts in question are 2 Comp. Laws 1929, § 11632 *et seq.* (Stat. Ann. § 22.1311 *et seq.*), being Act No. 9, Pub. Acts 1929. This act (section 3) vests control of those engaged ''in the business of purchasing or selling or transporting natural gas for public use'' in the Michigan public utilities commission. (The rights, powers and duties of this commission were transferred by Act No. 3, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 11017–1 *et seq.*, Stat. Ann. 1940 Cum. Supp. § 22.13 (1) *et seq.*], to the Michigan public service commission.) The commission is empowered to make regulations ''for the equitable purchasing, taking and collecting of all such gas, for the metering and delivery of the same,'' et cetera. (2 Comp. Laws 1929, § 11636 [Stat. Ann. § 22.1315].) The act prohibits those producing or receiving gas from producers in any production field from taking more than a maximum percentage of the daily natural flow of any gas well or wells as fixed by the commission. (2 Comp. Laws 1929, § 11638 [Stat. Ann. § 22.1317].) The act also authorizes the commission to prorate the take of gas whenever the full production from any common field is in excess of the market demands. (2 Comp. Laws 1929, § 11639 [Stat. Ann. § 22.1318].)

The record contains various exhibits showing what action the commission took in order to determine the maximum allowable withdrawals in the Six Lakes field and the proration schedules promulgated with respect thereto.

Even if the clause as to applicability of valid laws, et cetera, were not included in the agreement of the parties, it would still follow that Wolverine's right to recover is circumscribed by Act No. 9, Pub. Acts

1929, and the rules and regulations of the commission promulgated thereunder. The statute in question is regulatory of the production, purchase, and sale of natural gas, and of those engaged in the business. One of its purposes is to permit equitable withdrawal of gas by those interested in the common source or field of supply, for purposes of conservation, and to restrict the daily flow or output to that end. *Nelson* v. *Galpin,* 277 Mich. 529. Plaintiff and defendant, as well as other producers in the Six Lakes field, are subject thereto. The commission entered appropriate orders which control the situation. On the basis of plaintiff's own testimony, we agree with the statement of the trial judge that, "excepting for a negligible amount, defendant has taken and paid for the entire proportion of the total sales of gas from this field that was allotted to plaintiff's wells under these proration orders."

Section 4 of the act (2 Comp. Laws 1929, § 11635 [Stat. Ann. § 22.1314]) provides, in part, that:

"Such common purchasers are hereby expressly prohibited from discriminating in price or amount for like grades of natural gas or facilities as between producers or persons; and in the event it is likewise a producer, it is hereby prohibited from discrimination in favor of its own production, or production in which it may be interested directly or indirectly, in whole or in part, and its own production shall be treated as that of any other person or producer."

The conclusion of the trial judge was:

"All of the other producers of gas in this field are paid fifteen cents per thousand cubic feet for the gas actually withdrawn by the distributor, no more and no less. If defendant should pay, or should be compelled to pay plaintiff, not only for the gas actually withdrawn, but also something extra (in excess of six cents per thousand cubic feet) for gas not with-

drawn, the resulting discrimination in favor of plaintiff's wells over all of the other producers in the field would clearly be in contravention of the statute.

"Plaintiff may claim that any such excess payment would not be a discrimination because defendant could later withdraw gas paid for but not taken under the following clause in the contract: 'That should second party pay for but not take all of the required minimum quantity of gas during each twelve months as herein provided for, then in that event it may take and first party agrees to furnish without additional compensation such quantity of gas paid for but not taken during the next 24 months' period only, but that said quantity of gas paid for but not taken shall be furnished only at the rate of 50 per cent. of the amount by which the purchases under this contract during each of the said 24 months shall exceed the minimum quantities in effect during these 24 months.'

"For all practical purposes this clause in the contract is meaningless. So long as defendant's take is limited by the restrictions hereinbefore mentioned, the time has not arrived, and probably never will, when defendant can take even enough gas in any one year to satisfy what the plaintiff claims to be the required minimum, let alone taking more than that.

"The net result of an allowance of plaintiff's claim would be to enrich plaintiff to the extent of the allowance, for gas that defendant has paid for but may not take; gas, which defendant must take later, as it is not lost by not being withdrawn; but when taken must be paid for again. Such a result would be so unjust and inequitable that it cannot be entertained."

We agree with the conclusion reached by the trial judge that such a recovery would constitute an illegal discrimination contrary to the provisions of section 4 of Act No. 9, Pub. Acts 1929. (2 Comp. Laws 1929, § 11635 [Stat. Ann. § 22.1314].)

The judgment in favor of defendant is affirmed, with costs to appellee.

SHARPE, C. J., and CHANDLER, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred. BOYLES, J., did not sit.