ANTRIM RESOURCES v PUBLIC SERVICE COMMISSION

Docket Nos. 105380, 105804. Submitted December 7, 1988, at Grand
    Rapids. Decided August 21, 1989. Leave to appeal applied for.

In 1986, Michigan Consolidated Gas Company (Mich Con) entered
    into an amendment to its gas purchase contracts with intra-
    state gas producers which modified the pricing structure for
    calendar years 1986-88. The agreement set a ceiling price for
    1986 of $3.65 per thousand cubic feet and provided that the
    1987 ceiling price would be the 1986 price times a fraction, the
    numerator being the average of the commodity gas components
    in effect on October 1, 1986, by four named interstate gas
    pipeline companies and the denominator being the average of
    the commodity gas components of those same four pipeline
    companies on January 1, 1986. A similar index formula was
    used to determine the 1988 ceiling price. Mich Con filed an
    application with the Public Service Commission for approval of
    the contract amendments. The commission approved the ceiling
    price and the procedure for determining the 1987 and 1988
    ceiling prices. In September, 1986, Mich Con filed an applica-
    tion for approval of the 1987 ceiling price of $3.11414 per
    thousand cubic feet as computed by the formula in its agree-
    ment with the intrastate gas producers. The intrastate gas
    producers intervened, claiming that the PSC did not have statu-
    tory jurisdiction to establish the prices that Mich Con may pay
    for commonly purchased natural gas and that Mich Con's
    computation of the 1987 ceiling price was not in accord with
    the provisions of the contract amendments. Following a hear-
    ing, the administrative hearing officer held that the PSC had
    jurisdiction to establish a reasonable and appropriate price at
    which a common purchaser may purchase natural gas and to
    approve any changes in that price, that Mich Con correctly
    calculated the 1987 ceiling price under the contract provisions
    and that the price so calculated was reasonable and appropri-
    ate. Antrim Resources and others appealed. Grace Petroleum

REFERENCES

Am Jur 2d, Public Utilities §§ 135, 232, 233, 240 *et seq.*

See the Index to Annotations under Federal Energy Regulatory
    Commission; Gas and Oil; Pipes and Pipelines; Public Service
    Commissions; Utilities.

Corporation and others appealed separately. The appeals were consolidated.

The Court of Appeals *held:*

1. The Public Service Commission has jurisdiction to review common purchaser natural gas contracts to determine whether a price under such a contract is just and reasonable. That power is statutory in nature and does not arise out of a grant of such review by the parties to the contract. The exercise of that review power does not constitute a constitutionally prohibited impairment of contracts, since the contracts are entered into by the parties with knowledge of the power of the PSC to review the pricing provisions.

2. The PSC properly determined that the approval by the Federal Energy Regulatory Commission of a flexible purchased gas adjustment factor for interstate natural gas pipelines and the adoption of the flexible adjustment factor by one of the four named interstate pipelines is not a rate design change such as would bring into play the provision in the gas purchase agreement which would determine the 1987 ceiling price by an alternative method. The adoption of the flexible purchased gas adjustment factor is merely a new implementation and refinement of the existing purchased gas adjustment mechanism.

3. The determination by the PSC that the 1987 ceiling price was reasonable and appropriate was supported by competent, material and substantial evidence and was not contrary to law.

Affirmed.

1. PUBLIC UTILITIES — NATURAL GAS — COMMON PURCHASER CONTRACTS — PUBLIC SERVICE COMMISSION.

The Public Service Commission has statutory authority to review common purchaser contracts for natural gas and to determine whether the price set by the natural gas producers and a public utility under such a contract is just and reasonable; since the statutory authority to review common purchaser contracts for natural gas exists at the time such contracts are entered into, there is no constitutionally prohibited impairment of the contracts (MCL 483.110; MSA 22.131; US Const, art I, § 10; Const 1963, art 1, § 10).

2. PUBLIC UTILITIES — NATURAL GAS — PURCHASED GAS ADJUSTMENT.

The adoption by the Federal Energy Regulatory Commission of a flexible purchased gas adjustment factor for determining the gas cost component for interstate gas pipeline companies was not a new rate design but was rather merely a new implementation and refinement of the existing purchased gas adjustment.

*J. Andrew Domagalski,* for appellants in Docket No. 105380.

*Varnum, Riddering, Schmidt & Howlett* (by *Jack D. Sage* and *Mark L. Collins*), for appellants in Docket No. 105804.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Don L. Keskey* and *Patricia S. Barone,* Assistant Attorneys General, for the Public Service Commission.

*Foster, Swift, Collins & Coey, P.C.* (by *William K. Fahey*), and *Daniel L. Schiffer* and *Dennis R. O'Connell,* for Michigan Consolidated Gas Company.

Before: DOCTOROFF, P.J., and SAWYER and R. J. JASON,* JJ.

DOCTOROFF, P.J. This is an appeal from a Michigan Public Service Commission opinion and order entered on December 8, 1987 (Public Service Commission Case No. U-8573), establishing the common purchaser price between Michigan Consolidated Gas Company and its natural gas producers. Appellants (hereinafter producers) are eight among forty-five intrastate natural gas producers who have long-term gas purchase contracts with Michigan Consolidated Gas Company (Mich Con). Mich Con is a "common purchaser" pursuant to MCL 483.104; MSA 22.1314, subject to the control and regulation of the Michigan Public Service Commission under 1929 PA 9; MCL 483.101 *et seq.*; MSA 22.131 *et seq.* The producers question the jurisdiction of the PSC to determine a ceiling price which Mich Con may pay for Michigan-pro-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

duced gas and dispute the PSC's calculation of the ceiling price. We affirm.

Early in 1986, Mich Con and the producers entered into amendments of their gas purchase contracts which modified the pricing structure for the calendar years 1986-88. The ceiling price for the first year, 1986, was negotiated at $3.65 per unit of purchase. The amendments also contained a formula to determine the ceiling price to be paid for natural gas in 1987 and 1988. The amendment provided in paragraph 1:

> 1. *Subject to the obtaining of Michigan Public Service Commission (MPSC) approvals of the requested price changes to be sought by Buyer as discussed in paragraph 4 below,* the price for gas produced under each of the Contracts shall be charged at levels which achieve in each calendar month of the calendar year in question the lesser of the then current cost of gas as determined in accordance with the Contract or the following not to exceed cost of gas:
>
> (a) For the calendar year 1986, the price for gas produced under each of the Contracts shall be set at such a level which will achieve a not to exceed cost of gas of $3.65 per unit of purchase.
>
> (b) For the calendar year 1987, the price for gas produced under each of the Contracts shall be set at such a level which will achieve a not to exceed cost of gas per unit of purchase equal to the product of (i) the 1986 not to exceed cost of gas per unit of purchase authorized by the MPSC multiplied by (ii) *the "Index" for the year 1987 as determined by the procedure set forth in paragraph 2 below.* [Emphasis added.]

Paragraphs 2 and 3 read in pertinent part:

> 2. The Index for calendar year 1987 shall be calculated by dividing the Weighted Average Price Comparison (WAPC), as determined in accordance

with paragraph 3 below, as of October 1, 1986, by the WAPC as of January 1, 1986. The Index for calendar year 1988 shall be calculated by dividing the WAPC as of October 1, 1987 by the WAPC as of October 1, 1986.

3. For purposes of determining the Index, the WAPC shall be the sum of the following suppliers' commodity gas cost components, in effect under applicable rate schedules on January 1, 1986, October 1, 1986 and October 1, 1987 divided by 4:

(a) ANR Pipeline (ANR)

(b) Panhandle Eastern Pipe Line Company (Panhandle)

(c) Northern Natural Gas Company (Northern Natural)

(d) Natural Gas Pipeline Company of America (Natural Gas Pipeline)

. . . In order to calculate WAPC's on a consistent basis, *if rate design changes are made to the elements of the gas cost components for any of the listed suppliers, the parties hereto agree to calculate, as is necessary, the gas cost components on the same or a substantially equivalent basis used to determine the gas cost components shown above for January 1, 1986.* [Emphasis added.]

Paragraph 6 reads:

6. The *cost of gas* to be incurred by Buyer pursuant to this Amendment *is expressly conditioned only upon obtaining MPSC approval thereof pursuant to Section 10 of 1929 PA 9, as amended; MCL 483.110,* and is not conditioned on obtaining MPSC approvals involving any MPSC findings, determinations, or orders with respect to Buyer's GCR gas supply and cost review, 5-year forecast, or GCR reconciliation proceedings for the years 1986, 1987 and 1988. [Emphasis added.]

On March 21, 1986, Mich Con filed an application with the PSC for approval of the contract amendments as to the initial price change and the

formula (Public Service Commission Case #U-8443). In its order of June 26, 1986, the PSC approved the initial $3.65 price for 1986 and held that it would remain in effect until further order of the PSC. The PSC also approved the procedure contained in the contract amendments for determining the price changes for 1987 and 1988.

On September 17, 1986, Mich Con filed an application for approval of a new 1987 ceiling price under its gas purchase contracts with all forty-five intrastate gas producers (Case No. U-8573). On October 17, 1986, the application was amended to request a ceiling price of $3.11414 Mcf (thousand cubic feet), as computed according to the formula contained in the contract amendments which had been authorized by the PSC in Case No. U-8443. The producers were granted status as intervenors and an evidentiary hearing was held before a hearing officer. The PSC staff, Mich Con and the producers participated in the evidentiary hearing. At the hearing and in the parties' briefs, the central issues in dispute concerned the producers' assertions that (1) the PSC did not have jurisdiction under § 10 of 1929 PA 9 to establish prices that Mich Con may pay for commonly purchased natural gas and (2) the computation of the index under paragraphs 2 and 3 of the contract amendments was incorrect. Following the hearing and submission of briefs, the hearing officer issued a proposal for decision and the parties filed exceptions and replies. The PSC issued its final order and opinion on December 8, 1987. The PSC, following the hearing officer's recommendations, ruled that (1) it had jurisdiction pursuant to 1929 PA 9 to establish a reasonable and appropriate price at which a common purchaser may receive natural gas and to approve price changes, (2) Mich Con correctly calculated the index under the contract amend-

ments, and (3) the $3.11414 per Mcf price calculated by Mich Con was reasonable and appropriate.

The producers filed separate appeals, which have been consolidated by this Court.

The initial issues raised by the producers require us to determine the extent of the jurisdiction of the PSC. The PSC possesses no "common law" powers. As a creature of the Legislature, the PSC possesses only that authority bestowed upon it by statute. Thus, a determination of the PSC's powers requires an examination of the various statutory enactments pertaining to its authority. *Union Carbide Corp v Public Service Comm,* 431 Mich 135, 146; 428 NW2d 322 (1988). Section 6 of the Public Service Commission act, MCL 460.1 *et seq.*; MSA 22.13(1) *et seq.,* outlines the PSC's powers and jurisdiction, but furnishes no grant of specific powers. *Id.,* pp 146-147.

The intent of 1929 PA 9 is to grant to the PSC the power to control and regulate corporations, associations and persons engaged in the business of purchasing or selling or transporting natural gas for public use. Preamble and §§ 3, 9, 10, 11, 12 and 13. Every corporation, association or person engaged in such business is known as a common purchaser. Section 4. One of the purposes of the act is the conservation of natural gas. *Wolverine Natural Gas Corp v Consumers Power Co,* 296 Mich 500, 506; 296 NW2d 660 (1941); *Northern Michigan Exploration Co v Public Service Comm,* 153 Mich App 635, 646; 396 NW2d 487 (1986); §§ 7, 8 and 14. Another purpose of the act is to prohibit common purchasers from discriminating in price or amount for like grades of natural gas between producers. *Wolverine Natural Gas, supra;* §§ 4, 6 and 8.

The PSC relies upon § 10 of 1929 PA 9, MCL

483.110; MSA 22.1320, for the specific grant of jurisdiction to review and approve changes in gas prices paid by common purchasers. Section 10, prior to its amendment by 1987 PA 6 and for purposes of this appeal, stated:

> Every common purchaser or common carrier of natural gas shall before receiving the same for transmission or delivery file with the commission a schedule of the rates and price at which it will receive gas at delivery stations from any wells, field, or source of supply as well as the rates or charges at which it will deliver gas to connecting carriers or distributing lines or customers, and, in case it is operating as a carrier for hire, the rates and charges which it will charge for the service to be performed by it, together with copies of all contracts for purchasing, receiving or supplying gas, which price to be paid, rates and charges shall be stated and set up in the manner and form required by the commission and outlined in its rules and regulations for filing of rates of artificial gas utilities or in accordance with such rules, regulations and conditions of service as may be hereafter adopted by the commission and which it is hereby empowered to make for the regulation of such common purchasers and common carriers of natural gas. Thereafter a going common purchaser or common carrier of natural gas may alter or amend its price paid, rates, charges and conditions of service by application to and approval by the commission in the same manner and by the same process and under the same legal limitations and like right and process of appeal as are now provided by statute for the regulation by the commission of the rates for electricity transmitted in this state.

Section 10 requires that copies of the initial contracts between common purchasers and natural gas producers be filed with the PSC along with a schedule of the rates and price at which the com-

mon purchaser will receive gas. The statute is silent as to PSC approval of the initial price. It provides, however, that these contracts

> be stated and set up in the manner and form required by the commission and outlined in its rules and regulations for filing of rates of artificial gas utilities or in accordance with such rules, regulations and conditions of service as may be hereafter adopted by the commission and which it is hereby empowered to make for the regulation of such common purchasers.

Clearly, the statute does not contemplate that producers and Mich Con may enter into initial contracts for the purchase of gas which contain pricing provisions or rate schedules determined at the parties' whim and caprice. The statute mandates that these initial contracts adhere to the rules and regulations of the PSC. Mich Con explained that, when it enters into a contract with a new producer, this provision and other nondiscrimination provisions contained in 1929 PA 9 require it to pay the same prevailing price as that paid to other similarly situated producers. Thus, there is no need to regulate or approve the initial price because it is already "fixed."

Section 10 requires application to and approval by the PSC before Mich Con may alter or amend the price paid for natural gas. We conclude that the statute quite clearly confers jurisdiction on the PSC to approve any alterations or amendments to the price a common purchaser may pay for natural gas.

The requirement that all gas purchase contract agreements be filed with the PSC and the requirement that any alterations or amendments in price paid for gas purchased be approved by the PSC implies that the PSC will inspect and interpret the

pricing provisions in these contracts to determine whether they conform with the rules and regulations which the PSC is empowered to promulgate in order to fulfill its duty to regulate common purchasers of natural gas. Thus, the producers' contention that 1929 PA 9 does not grant the PSC jurisdiction and authority to interpret contracts between Mich Con and the producers is without merit. There is no question that, in its earlier approval of the initial $3.65 price for 1986 and the procedure established by the parties for the determination of the 1987 and 1988 ceiling prices, the PSC must have engaged in a certain amount of contract interpretation in its determination that the initial price change was reasonable and that the parties might use the proposed formula.

Producers who enter into contracts with common purchasers are charged with the knowledge that they are subject to the jurisdiction of the PSC to the extent that the pricing provisions in their contracts with common purchasers and any alterations or amendments in the price are subject to PSC approval.

The producers contend that the PSC's jurisdiction to "approve" price changes is limited to a determination of whether a common purchaser is paying "at least a price to prevent waste" or is discriminating against a producer in a manner prohibited by 1929 PA 9 and, thus, the PSC has no authority to base its determination on the reasonableness of the price or to establish ceiling prices. We agree that 1929 PA 9 prohibits discrimination among producers by common purchasers and requires a consideration of the conservation and protection of natural gas. However, we conclude that the PSC also has jurisdiction to determine whether the price which Mich Con may pay for natural gas is just and reasonable. Section 10 requires PSC ap-

proval of any alteration or amendment of the price paid "in the same manner and by the same process and under the same legal limitations and like right and process of appeal as are now provided by statute for the regulation by the commission of the rates for electricity transmitted in this state." This refers to 1909 PA 106, MCL 460.551 *et seq.*; MSA 22.151 *et seq.* See *Sullivan v Public Service Comm,* 93 Mich App 391, 397-398; 287 NW2d 188 (1979), lv den 411 Mich 1004 (1981). Section 7 of 1909 PA 106, MCL 460.557; MSA 22.157, provides for the investigation and resolution of complaints by purchasers of electricity from public utilities supplying electricity. The statute is concerned with the *rates charged* to purchasers of electricity by the public utility and that these rates not be discriminatory. Thus, the statute is silent as to the PSC's jurisdiction to establish prices that public utilities supplying electricity to the general public may pay for the *source* of that electricity. Nevertheless, one provision of the statute is instructive for purposes of resolving the issue raised by the producers herein:

> The prices, rates and charges of every electric utility shall be just and reasonable and no consumer shall at any time be charged more or less than other consumers are charged for like contemporaneous service rendered under similar circumstances and conditions.

There is no mention of establishing ceiling prices or minimum prices. The requirement is that the price must be "just and reasonable" and that all those similarly situated must be treated the same. Extrapolating from this provision, and applying it to the instant matter, we would read this provision as follows:

> The prices [paid to producers of natural gas] shall be just and reasonable and no [producer of natural gas] shall at any time be [paid] more or less than other [producers of natural gas] are [paid] for like contemporaneous service rendered under similar circumstances and conditions.

The PSC states that, in establishing a reasonable and appropriate price, it looks at the contract pricing provisions, the cost of interstate and intrastate natural gas, past PSC-approved gas purchase prices, the cost of alternate fuels and governmentally established gas prices. For over fifty years, the PSC has relied upon § 10 of 1929 PA 9 as a legislative grant of jurisdiction to interpret and inspect the pricing provisions of gas purchase contracts filed by common purchasers and has based its approval of price changes on a determination of reasonableness. This longstanding reliance is to be given respectful consideration by the courts. *Magreta v Ambassador Steel Co,* 380 Mich 513, 519; 158 NW2d 473 (1968). The history of an act and common sense play a part in construing an act. *Arrowhead v Livingston Co Road Comm,* 413 Mich 505, 516; 322 NW2d 702 (1982). 1929 PA 9 remained intact for fifty-eight years before the Legislature amended § 10 by 1987 PA 6. This amendment, which merely clarifies some statutory language and adds a statutory provision for appeal from orders of the PSC, contains the same requirements as the original statute for filing of contracts and for approval of any alterations or amendments in the price paid for gas. The Legislature must have contemplated that the PSC would inspect and interpret the filed contracts to determine if the pricing provisions were reasonable and appropriate. The Legislature is presumed to know of an agency's interpretation of applicable statutes.

*Northern Michigan Exploration Co,* p 645. The PSC has long interpreted the "approval" phrase in § 10 to require a determination of whether the requested price adjustment was just and reasonable. Here, the Legislature did not choose to amend the statute in a manner which would require a different interpretation.

Under MCL 483.105; MSA 22.1315, the PSC has the option of setting standards either pursuant to the rule making provisions of the Administrative Procedures Act, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.,* or case-by-case through adjudication. *Northern Michigan Exploration Co,* p 649. In its legislative mandate to control and regulate corporations, associations or persons engaged in the business of purchasing or selling natural gas, we conclude that the PSC has jurisdiction to inspect and interpret the price aspect of contracts entered into by common purchasers and to determine the reasonableness of requested price changes.

The producers argue that wellhead prices for gas sold to a common purchaser are a matter of private contract. We disagree. The producers appealed before the PSC not to challenge the approved procedure, but to challenge the application of that procedure by Mich Con. Thus, there was agreement by both parties and the PSC as to the *method* of calculation, but disagreement as to whether the method or formula had been correctly applied. In essence, then, for purposes of determining the reasonableness of the proposed price change, the PSC did not have to "interpret" the contract. It had only to determine whether or not Mich Con had correctly *applied* the approved formula to arrive at the $3.11414 proposed ceiling price. Where a claim challenges the application of a rule or regulation promulgated by the PSC, jurisdiction is properly in the PSC. *Stark Steel Corp v*

*Mich Con Gas Co,* 165 Mich App 332, 335; 418 NW2d 135 (1987).

The producers argue that absent agreement by the parties to the contract as to a specific price, the PSC does not have jurisdiction to establish a price that Mich Con may pay for commonly purchased natural gas. The producers claim that the PSC may approve a price only when both parties to a contract submit an agreed-upon price. We disagree. The statute requires that common purchasers apply to the PSC for approval of any alterations or amendments of the price paid for natural gas. There is nothing in § 10 which would lead us to conclude that both parties to a gas purchase contract must agree to a specific price before the PSC may make a determination of reasonableness.

The producers next contend that the PSC's interpretation of 1929 PA 9 results in a violation of the constitutional right against impairment of contracts. US Const, art I, § 10; Const 1963, art 1, § 10. We disagree. The Supreme Court of the United States has stated that "the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it." *Home Building & Loan Ass'n v Blaisdell,* 290 US 398, 429-430; 54 S Ct 231; 78 L Ed 413 (1934). Thus, a contract cannot be impaired within the meaning of art I, § 10 of the Constitution, by a statute enacted prior to the making of a contract. *Reding v Texaco, Inc,* 598 F2d 513, 519 (CA 9, 1979). This statute has been in existence since 1929. Further, the contract amendments entered into between Mich Con and the producers directly incorporated the procedures set forth in § 10 of 1929 PA 9 by providing for PSC approval of the price changes contemplated. We conclude that the PSC's subsequent action could not "impair" a contract where said action was pro-

vided for therein and where the statute was in effect prior to the formation of the contract.

We find *Union Carbide, supra,* 431 Mich 135, to be distinguishable from this case. In *Union Carbide,* Consumers Power had been operating certain of its more costly oil-fired generating plants in preference to other less costly alternative facilities. The PSC ordered Consumers Power to cease these noneconomic management practices. The Supreme Court held that the power to fix and regulate rates does not carry with it the power to make management decisions. *Id.,* pp 148, 151. The PSC's order exceeded its ratemaking authority. *Id.,* p 150.

This opinion does not conflict with *Union Carbide.* First, *Union Carbide* did not involve 1929 PA 9, as does the instant case. Second, we conclude that the ceiling price which Mich Con pays to its producers falls under the PSC's authority to regulate the production, purchase and sale of natural gas and to approve alterations and amendments of the price paid for natural gas. This is not akin to an internal management operating practice or decision.

Thus, having concluded that the PSC has jurisdiction to determine the reasonableness of requested price changes and may, in its determination, inspect and interpret the pricing provisions in the contracts filed with the PSC, we will consider the producer's next claim that the PSC's approval of the $3.11414 price submitted by Mich Con was clearly erroneous because it was based on a mistaken conclusion regarding the calculation of the index.

According to the PSC-approved formula in the parties' contract amendments, in order to calculate the ceiling price the parties were required to use four suppliers' commodity gas cost components in effect on certain specified dates to determine the

Weighted Average Price Comparison. The pricing formula for the 1987 ceiling price is:

$$1986 \text{ ceiling price} \times \frac{\text{October 1, 1986 WAPC}}{\text{January 1, 1986 WAPC}} = 1987 \text{ ceiling price}$$

Under the terms of the contract amendments, the October 1, 1986, WAPC is the average of the commodity gas cost components in effect under the applicable rate schedules on October 1, 1986, of the four designated intrastate pipelines: ANR, Panhandle, Northern Natural, and Natural Gas Pipeline.

The 1986 ceiling price of $3.65 and the January 1, 1986, WAPC of $2.5455 were not in dispute. At the evidentiary hearing, the producers disagreed with Mich Con's determination of the October 1, 1986, WAPC, arguing that a change in the method of determining Northern Natural's gas cost component affected the accuracy of the ceiling price as proposed by Mich Con. Mich Con and the PSC staff averred that Mich Con correctly calculated the October 1, 1986, WAPC using Northern Natural's commodity gas cost component on that date even though that company was using a flexible purchased gas adjustment (PGA) cost factor in determining its commodity gas cost component.

Permission to use a flexible PGA cost factor was granted by the Federal Energy Regulatory Commission (FERC) between the January 1 and October 1, 1986, WAPC calculations. Under FERC's order, Northern Natural must still file an annual PGA, but is permitted at any time to adjust its rates to reflect a revised average cost of gas. The flexible PGA is a relatively new form of PGA that permits frequent, rapid adjustments in the price of gas within established limits. In its order, FERC stated that the flexible PGA would provide greater flexibil-

ity "within the established PGA framework of our PGA regulations."

The producers contended below and again on appeal that the flexible PGA was a totally new method of gas cost recovery which, under the terms of the pricing formula, should not be utilized. The crux of the disagreement between Mich Con and the producers was whether the flexible PGA is a "rate design change." If so, the last sentence of paragraph 3 of the amended contract would come into play and the October commodity gas cost figure supplied by Northern Natural must be disregarded and a new figure calculated by the parties must be substituted. Testimony on this dispute was taken from expert witnesses for the producers, Mich Con and the PSC staff.

The PSC held that the flexible PGA was not a new rate design or a startling new concept of gas cost recovery, but merely a new implementation and refinement of the existing PGA mechanism. Thus, the PSC held that the flexible PGA was appropriately utilized by Mich Con in computing Northern Natural's commodity gas cost component and that the $3.11414 per Mcf price was calculated in a manner consistent with the previous ceiling price paid under the producers' contracts. However, the PSC's inquiry did not end there. It further reviewed new and existing intrastate and interstate gas purchase contracts and determined that the requested price of $3.11414 was within the range of reasonable prices paid by Mich Con for both interstate and intrastate natural gas. The PSC then found that $3.11414 was reasonable and appropriate and authorized it as the ceiling price for 1987.

Appellate review of PSC orders is narrow in scope. Under MCL 462.25; MSA 22.44, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC

are deemed, prima facie, to be lawful and reasonable. *Michigan Consolidated Gas Co v Public Service Comm*, 389 Mich 624; 209 NW2d 210 (1973). The party attacking an order of the PSC must prove by clear and satisfactory evidence that the order complained of is unlawful or unreasonable. MCL 462.26; MSA 22.45; *City of Lansing v Public Service Comm*, 330 Mich 608; 48 NW2d 133 (1951); *Attorney General v Public Service Comm*, 161 Mich App 506, 515; 411 NW2d 469 (1987), lv den 429 Mich 879 (1987). The reviewing court is to give due deference to the PSC's administrative expertise and is not to substitute its judgment for that of the PSC. *Yankoviak v Public Service Comm*, 349 Mich 641, 648; 85 NW2d 75 (1975); *Building Owners & Managers Ass'n of Metropolitan Detroit v Public Service Comm*, 131 Mich App 504, 517; 346 NW2d 581 (1984), aff'd 424 Mich 494 (1986).

The standard of judicial review of a decision of the PSC is whether that decision is lawful and supported by competent, material and substantial evidence on the whole record. Const 1963, art 6, § 28. It is for the PSC to weigh conflicting opinion testimony of the qualified ("competent") experts to determine how the evidence preponderated. Expert opinion testimony is "substantial" if offered by a qualified expert who has a rational basis for his views, whether or not other experts disagree. *Great Lakes Steel Division of National Steel Corp v Public Service Comm*, 130 Mich App 470, 481; 344 NW2d 321 (1983), lv den 419 Mich 895 (1984).

In its opinion, the PSC rejected the assessment of the producers' expert witness that the flexible PGA was a totally new method of gas cost recovery. Rather, it pointed to the expert testimony of the PSC staff witness regarding the history of PGAs, the effect of the change to a flexible PGA within the existing methodology and the definition of a rate

design change. It also considered FERC's statement that the flexible PGA was "within the established PGA framework." Giving due deference to the PSC's administrative expertise and the rational basis for the expert testimony relied upon by the PSC, we find no error in the PSC's approval of the $3.11414 price. The PSC's opinion reflects a careful consideration of all the evidence presented. The producers have failed to meet their burden of proving that the PSC's decision was unlawful or not supported by competent, material and substantial evidence.

Because we conclude that the PSC did not err in its determination that the price presented by Mich Con was reasonable, we find it unnecessary to consider whether the price sponsored by the producers was reasonable.

Affirmed. No costs, a public question being involved.