35 F.3d 566
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NORTH MICHIGAN LAND & OIL CORPORATION; the Ray D. Markel
Testamentary Residual Trust B, by Ron D. Markel and James W.
Markel, Co-Trustees; Nielson Enterprises Corporation;
Nielson Enterprises Limited Partnership; North Michigan Gas
& Oil, a Limited Partnership; David E. Nielson; Dale M.
Nielson; Gerald J. Talbot; CMK Enterprises, Inc.; the
Idonea Hersee Trust, by Idonea Hersee as Trustee; Dennis
Olson; Sandra Olson, Plaintiffs-Appellants,
and Energy Reserves, Inc., Intervening Plaintiff-Appellant,
v.
CONSUMERS POWER COMPANY; Michigan Public Service
Commission; Steven M. Fetter, Chairman; Ronald
E. Russell, Commissioner; John L.
O'Donnell, Commissioner,
Defendants-Appellees.
 Nos. 93-1705, 93-1775.
 United States Court of Appeals, Sixth Circuit.
 Aug. 26, 1994.
 
 Before: KEITH and MILBURN, Circuit Judges; and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The district court had federal question jurisdiction to entertain this action but dismissed it relying on the Burford abstention doctrine. On appeal, the issue is whether the district court erred by dismissing this action under the Burford abstention doctrine. For the reasons that follow, we hold that the district court did not commit error, and, therefore, we affirm.
 
 I.
 
 2
 Plaintiffs are natural gas producers in Michigan that supply gas to defendant Consumers Power Company pursuant to a Gas Purchase Contract dated July 1, 1977. In 1987, the Michigan Public Service Commission (MPSC), through gas cost recovery proceedings, reduced the price Consumers could charge its customers. The effect of this reduction was to prevent Consumers from passing the full cost of its gas purchases from plaintiffs on to its customers. In other words, the price the MPSC allowed Consumers to charge was less than the price Consumers was obligated to pay under the Gas Purchase Contract. Consumers then filed applications with the MPSC under Act 9, Mich.Comp.Laws Ann. Sec. 483.101 et seq., seeking to have its obligations under the Gas Purchase Contract reduced. In 1989 after negotiations between the gas producers, including plaintiffs herein, and the MPSC staff, a Settlement Agreement was reached which set a lower price for the period from 1986 through November 1991 than that provided in the Gas Purchase Contract. However, plaintiffs and Consumers also entered a Letter Agreement dated August 7, 1989, which provided that the price for gas sold and purchased under the contract after the period provided in the Settlement Agreement would be the full contract price. Thus, the Gas Purchase Contract was amended to provide for a lower price until December 1991 and to extend the term of the contract until 1995, during which additional term the price would be the full contract price before the Settlement Agreement reduction.
 
 
 3
 On November 27, 1991, Consumers filed an application with the MPSC under Act 9, seeking to avoid the price increase called for by the Letter Agreement (MPSC Case No. U-10029). Plaintiffs intervened in U-10029 and challenged the MPSC's jurisdiction. On June 29, 1992, an administrative law judge determined that the MPSC did have jurisdiction. After they were unsuccessful in having the MPSC dismiss the case, plaintiffs filed the present action in the district court against Consumers, the MPSC, the MPSC chairman, and two MPSC commissioners. The complaint alleged that application of Act 9 by Consumers and the MPSC in U-10029 would violate the Contracts, Due Process, and Equal Protection Clauses and the Separation of Powers principle of the United States and Michigan Constitutions. The complaint further alleged that the MPSC's consideration of a new gas price was barred by res judicata or collateral estoppel, that Consumers was estopped from utilizing Act 9, and that U-10029 was barred because the area had been preempted by Congress. The complaint sought a declaratory judgment that U-10029 was barred by those grounds and an injunction prohibiting defendants from proceeding with U-10029. The complaint also contained a claim for damages under 42 U.S.C. Sec. 1983 for deprivation of constitutional rights and pendent state claims for breach of contract and breach of the duty of good faith.
 
 
 4
 Upon defendants' motion, the district court dismissed the case holding that it would abstain from exercising jurisdiction under the Burford doctrine. Although not mentioned in the district court's opinion, the MPSC had already issued an order relieving Consumers from having to pay the full contract price. This timely appeal followed.
 
 II.
 
 5
 Generally, a district court must adjudicate the claims within its jurisdiction. However, there are several abstention doctrines that provide exceptions to this rule and allow a district court to decline to exercise its jurisdiction. We review a district court's decision to abstain de novo. Traughber v. Beauchane, 760 F.2d 673, 676 (6th Cir.1985).
 
 
 6
 The abstention doctrine relied on by the district court in this case was first used by the Supreme Court in Burford v. Sun Oil Co., 319 U.S. 315 (1943), and has come to be known as the Burford doctrine. In Burford, an oil company brought an action in district court to enjoin the enforcement of the Texas Railroad Commission's order granting an oil drilling permit. Administration of the state's comprehensive oil and gas regulatory scheme was centralized in the Texas Railroad Commission, and state law provided for judicial review of the Commission's decisions in a single state trial court with appeal rights to the state appellate courts. The Supreme Court held that even though the federal district court had subject matter jurisdiction, based on diversity of citizenship and on the oil company's contention that the Commission's order denied it due process, it should abstain from hearing the case because the state had centralized the regulation of oil and gas matters in the Commission and provided for adequate review of the Commission's decisions in state court. Review by the federal court would inevitably lead to conflicts in the interpretation of state law, resulting in frustration of important state policy, whereas allowing review in the state court would still preserve any federal questions for ultimate review by the Supreme Court. Id. at 333-34.
 
 
 7
 The Supreme Court has described the circumstances under which Burford abstention is appropriate as follows:
 
 
 8
 Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."
 
 
 9
 New Orleans Public Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361 (1989) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (1976)).
 
 
 10
 In this case, the district court concluded that Burford abstention was appropriate because plaintiffs' claims challenging the MPSC's actions pursuant to Act 9 raised difficult questions of state law which affect public policy concerns. The district court stated, "The State of Michigan has a significant interest in the issue of the regulation of pricing provisions in contracts between gas producers and gas utilities[,]" and "the MPSC has specialized competence in the area of natural gas regulation in Michigan which this Court could not duplicate." J.A. 340. Furthermore, the district court concluded that because the Michigan Court of Appeals can consider plaintiffs' constitutional challenges, plaintiffs' claims would not be prejudiced by the abstention.
 
 
 11
 We conclude that the district court did not err in dismissing this case under the Burford doctrine. As the district court noted, the MPSC has special competence in the field of intrastate natural gas regulation, and there is adequate state-court review available to challenge the MPSC order on federal constitutional as well as state law grounds. The MPSC decision can be appealed through the state appellate courts. In fact, such an appeal is now pending. However, plaintiffs argue that since the MPSC does not have jurisdiction to address constitutional issues, see Wronski v. Sun Oil Co., 310 N.W.2d 321, 324-25 (Mich.Ct.App.1981); Golembiowski v. Madison Heights Civil Service Commission, 286 N.W.2d 69, 76 (Mich.Ct.App.1979), appeal denied, 408 Mich. 893 (1980), "any appeal from the [MPSC's] Order could not be determinative of those constitutional issues because the Court of Appeals could only address those issues which were properly decided by the [MPSC]." Appeal Brief of Appellants at 42. In the MPSC proceedings involved in this case, the MPSC noted that plaintiffs' constitutional challenges were meritless. Whether or not the MPSC had the jurisdiction to decide those issues is questionable. However, the Michigan cases show that the Michigan Court of Appeals regularly entertains constitutional challenges in reviewing MPSC orders. For example, in an appeal of an MPSC order establishing a common purchaser gas price, the Michigan Court of Appeals discussed and rejected the same impairment of contract argument raised in this case. See Antrim Resources v. Public Serv. Comm'n, 446 N.W.2d 515, 521 (Mich.Ct.App.1989), appeal denied, 434 Mich. 914 (1990). In this case, plaintiffs have presented all of their constitutional challenges to the Michigan Appellate Court, and there is nothing to indicate that that court will not resolve those issues if they are determinative of the case.[1]
 
 
 12
 Furthermore, a determination of the issues in this case would require the court to delve into the complexities of Michigan's extensive regulation concerning intrastate gas purchases. The production and sale of natural gas is extensively regulated by the State of Michigan, and the administration of these regulations is centralized in the MPSC. The present case involves Act 9, M.C.L.A. Sec. 483.101, et seq. Section 10 of Act 9, MCLA Sec. 483.110, requires every common purchaser of natural gas, such as Consumers, to file with the MPSC a schedule of gas purchase rates and all gas purchase contracts. Section 10 further requires application and approval of all gas price amendments. The Michigan courts have held that Sec. 10 grants the MPSC jurisdiction to determine whether the price the common purchaser pays to the producers is just and reasonable. E.g., Antrim, 446 N.W.2d at 519. The interrelation and interpretation of Sec. 10 and other sections of Act 9 lies at the bottom of this case, and a federal court disposition of the issues involved presents the risk of interpreting state law in a manner inconsistent with the interpretation given by or to be given by the Michigan courts. Inconsistent interpretations of state law run the risk of frustrating the state interest in regulating the producers and purchasers of natural gas as evidenced by Act 9.
 
 
 13
 Plaintiffs argue that Act 9 does not affect public policy concerns because ratepayers are not affected by Act 9 proceedings. Plaintiffs argue that Act 9 is not a ratemaking statute but rather its primary purpose is to protect producers against discrimination by common purchasers. Plaintiffs are correct that one of the purposes of Act 9 is to protect producers against price discrimination. However, that is not the only purpose of the act. For example, the Michigan courts have explained that "[o]ne of the purposes of the act is the conservation of natural gas." Antrim, 446 N.W.2d at 518. And, the intent of the statute is much broader than the prohibition of discrimination between producers. "The intent of [Act 9] is to grant to the [M]PSC the power to control and regulate corporations, associations and persons engaged in the business of purchasing or selling or transporting natural gas for public use." Id. As the breadth of Act 9 evidences, the State of Michigan has a significant interest not only in the prices charged to its individual citizens by a utility, but also in the costs incurred by the utility. Although ratepayers may not be directly affected by the outcome of Act 9 proceedings because utilities do not necessarily completely recover their gas costs from the ratepayers, the amount the utility can recover is dependent on the costs reasonably incurred by the utility, and this is often impacted by Act 9 proceedings or the lack thereof. For example, the MPSC in the past has disallowed portions of intrastate gas contract costs because the utility had not taken available regulatory steps such as Act 9 proceedings to challenge intrastate contract prices.
 
 
 14
 Thus, we conclude that the district court correctly abstained from deciding the merits of plaintiffs' claims. A decision on these claims would necessarily involve analysis and interpretation of Michigan's complex regulatory scheme concerning the intrastate production and sale of natural gas. A federal court disposition of these matters might result in an interpretation of the regulatory scheme that would conflict with the interpretation of the MPSC and the Michigan courts and be disruptive of the MPSC's efforts to regulate natural gas purchase prices, efforts that the Michigan courts have sanctioned. Review of the MPSC's disposition of this case is available in the Michigan courts, where plaintiffs will have the opportunity to present their constitutional arguments. Therefore, the district court correctly decided to allow the MPSC and the Michigan courts to address these issues unencumbered by a federal court decision. If plaintiffs are not satisfied with the Michigan courts' disposition of the constitutional issues in this case, they will eventually have the opportunity to request review by the Supreme Court.
 
 III.
 
 15
 For the reasons stated, the district court's judgment of dismissal is AFFIRMED.
 
 WELLFORD, Senior Circuit Judge, concurring:
 
 16
 Although I agree with the majority that under the circumstances of this case the Burford abstention doctrine bars plaintiffs' action at this time, I write separately to express my concerns about the potential inequity in this case.
 
 
 17
 Defendant, Consumers Power Company ("Consumers"), entered into a settlement agreement with plaintiff, North Michigan Land & Oil Corporation ("NMLO"), (and other plaintiffs) following negotiations over reductions in price to the bargained price in certain producer contracts. There was a settlement in 1989, initiated after efforts of the Michigan Public Service Commission ("MPSC"), to investigate the price involved by Michigan producers for their gas from Consumers, a Michigan public utility and gas distributor, for a five year period extending through 1991. A letter agreement between the parties, however, provided that Consumers would pay to plaintiffs the contract price (not the lowered rate) for the period extending beyond 1991. The parties complied with the settlement arrangement--to Consumers' advantage through 1991.[1]
 
 
 18
 In November, 1991, just prior to the beginning of the period when the price for gas produced by plaintiffs would revert to the contracted-for level, Consumers filed an application with MPSC (MPSC Case No. U-10029), seeking to avoid the letter agreement, which was part of the settlement arrangements. Consumers' alleged conduct in this regard bears the mark of a breach of agreement or misrepresentation by Consumers, according to plaintiff, to their detriment, and they sought to intervene in the MPSC case. They also sued Consumers and MPSC based on breach of agreement and on constitutional grounds.
 
 
 19
 At issue in the MPSC Case No. U-10029, initiated by Consumers, was the authority of the Commission under Act 9 of the Michigan law to set "a just and reasonable price" for the gas produced by plaintiffs and "to relieve Consumers of its purchase obligations." (The contract price was about $4.375 per MMBTU at 15 million cubic feet (MMCF) per day.) Plaintiffs were permitted to intervene, as were others, in the MPSC proceeding. Among other contentions, plaintiffs asserted that "redetermining the contract price would be inconsistent with the settlement agreement approved" in a prior proceeding dealing with the 1986-1991 agreed reduction, and that "granting [Consumers] relief ... would be unconstitutional." The ALJ, after a hearing, held that MPSC had authority to set a reasonable price regardless of contract, but "may not relieve a common purchaser [Consumers] of its obligations to purchase contractually specific volumes of gas for reasons other than preventing waste or discrimination." NMLO and the Michigan Attorney General appealed. MPSC held that it could indeed set the price under Michigan law, not limited to situations involving only waste and discrimination. MPSC considered a much lower recommended gas rate and noted that Consumers did not at the time of settlement submit the agreed arrangement for extending the original contract price beyond 1991 to MPSC for its approval.
 
 
 20
 Consumers' agreement with plaintiffs, however, contained the following provision:
 
 
 21
 Consumers Power agrees that if any variations result in an obligation to pay a producer more than this Settlement Agreement recognizes as proper for GCR recovery, Consumers Power shall be responsible for such excess payments without recourse to its customers.
 
 
 22
 The question then becomes whether Consumers, by reason of its action in not notifying the MPSC of its settlement arrangement letter agreement, and by making the above agreement with plaintiffs, may be bound to honor that contract "without recourse to its customers" and despite MPSC's purported authority to set "reasonable rates" for the kind of intrastate gas production price involved in this controversy. Energy Reserves, another plaintiff, relied on Consumers' agreement and claimed to have had no knowledge of Consumers' claim that contract prices were subject to modification. The State of Michigan, on the other hand, took the position that Consumers' contract extension agreement was "unreasonable," and the price should be adjusted downward by about forty percent.
 
 
 23
 The ALJ's position had been that Consumers' agreement of 1989, "not approved [by MPSC] for purposes of Act 9," should have a limited effect only with respect to a "private" dispute between the parties. The ALJ's position, in short, was that MPSC was not bound by Consumers' agreement as to gas prices beyond November, 1991. The ALJ recommended an adjusted non-retroactive price of 3.05 per MCF, plus add-ons as a reasonable price. The ALJ made reference to Antrim Resources v. Public Service Commission, 179 Mich.App. 603, 465 N.W.2d 515 (1989), for her approval of jurisdiction in MPSC to approve pricing provisions for intrastate gas purchases, "including prices lower than those provided by contract."
 
 
 24
 MPSC, again relying on Antrim Resources, held that it did have jurisdiction under Act 9[2] to make price redeterminations for intrastate gas purchase contracts, not limited only to waste and discrimination concerns. See also Miller Brothers v. Public Service Commission, 180 Mich.App. 227, 446 N.W.2d 640 (1989). NMLO raised constitutional arguments before MPSC, stating, however, that it did not "believe that the Commission has the ability to address constitutional issues," but in order to preserve its rights for appellate purposes. Essentially, plaintiffs raised before MPSC the constitutional arguments and challenges it makes in federal court, including impairment of contracts, equal protection violations, vagueness, and due process violations. The Commission, however, stated that it did "not believe that there is any constitutional impediment to determining the issues raised in Consumers' application."
 
 
 25
 MPSC held that Antrim Resources and Miller Brothers had already decided the impairment of contract issue, and that requiring a change in a contractual price to be submitted for its approval with a "full and fair opportunity to be heard" to "common purchasers, producers and other interested parties" did not violate equal protection or due process rights. MPSC also ruled that it was "not obligated to give effect to Consumers' agreement" hereinabove set out. It interpreted the prior approved settlement was "not intended to achieve a final adjudication of any issue affecting prices after November, 1991." MPSC also denied the plaintiffs' claim that Consumers should be estopped by reason of its actions.
 
 
 26
 Because the extended agreement (original contract) price would be "potentially detrimental to rate payers to the extent that rates and conditions of utility service were affected," MPSC found that to enforce such an "above market" price would not be "consistent with the public interest," and rejected plaintiff-intervenors' claims.
 
 
 27
 Plaintiffs have appealed the MPSC decision to the Michigan appellate court and have preserved their constitutional objection to Consumers' actions and to the decision of the MPSC. It would appear that plaintiffs may have an opportunity to argue their contentions, constitutional and otherwise, before the Michigan courts. The position of MPSC counsel at oral argument, however, gives this judge pause in this case--that the MPSC had no jurisdiction over and did not decide contract disputes between the parties before it.
 
 
 28
 As I see this dispute, the MPSC has purportedly acted within its jurisdiction in this case based on Michigan law. It did purport to construe the critical provision of Consumers' letter agreement as not intended to be effective beyond 1991. Plaintiffs' principal contention is its claim for contract repudiation by Consumers in light of the latter's failure to submit the letter agreement for approval back in 1989, and its agreement to honor the original contract price "without recourse" to its ultimate customers. If the Michigan courts indeed do not furnish an adequate forum for the plaintiffs to pursue promptly and efficiently their breach of contract claim, regardless of whether Consumers may pass on a recovery for contract breach, then I would believe the Michigan laws in this area of controlled gas rates may fail constitutional muster.
 
 
 29
 Despite my doubts in this regard, I do not presume that Michigan will fail to provide a full and fair opportunity for plaintiffs to present all their constitutional and breach of contract claims against Consumers in due course. I, therefore, concur in the majority decision to abstain, but with somewhat more trepidation concerning adequacy of remedy before MPSC and the Michigan courts, under these circumstances. See Lakewood Petroleum v. Consumers Power Co., No. 164192 (Mich.Ct.App. Aug. 9, 1993); Raymond George v. Mich. Con., No. 160949 (Mich.Ct.App. Mar. 10, 1993).
 
 
 
 [1]
 We note that plaintiffs have also argued that they will have no forum in which to press their state breach of contract claims if we affirm the district court's abstention. This argument does not affect our analysis for several reasons. First, whether the state provides a forum for breach of contract claims is not our concern. Subject matter jurisdiction in this case was predicated on the federal question concerning the constitutionality of the MPSC procedures. There is no diversity of citizenship between the plaintiffs and defendants, and therefore the state law claims were present in this case only by virtue of supplemental jurisdiction. Second, we note that by selling as to a common purchaser, plaintiffs subjected their business relationship to Michigan's extensive scheme of regulation of intrastate natural gas sales, including the price control of the MPSC. Third, all of the facts surrounding the breach of contract claim were presented to the MPSC and are now before the Michigan Court of Appeals. The alleged breach of contract could be a basis for the appellate court to reject the MPSC decision
 
 
 [1]
 NMLO alone received almost $14 million less from Consumers through 1991 than it had anticipated and agreed in the original contract. Cosumers' proposal before the MPSC through 1995 would result in a $90 million price adjustment, according to the testimony of the manager of NMLO operations
 
 
 [2]
 The pertinent provisions of Act 9 are as follows:
 [A]ny other person or persons, now or hereafter engaging in the business of buying and selling or transporting natural gas within the limits of this state, shall not have or possess the right to conduct or engage in said business or operations, in whole or in part, as above described.... [E]xcept as authorized by and subject to the provisions of this act....
 Mich.Comp.Laws Sec. 483.101.
 Every corporation, association or person, ... now engaged or hereafter engaging in the business of purchasing and selling natural gas shall be a common purchaser thereof, and shall purchase all the natural gas in the vicinity of, or which may be reasonably reached by its pipe lines, or gathering branches, without discrimination....
 Id. Sec. 104.
 The commission is hereby empowered and it is made its duty to make regulations for the equitable purchasing, taking and collecting of all such gas, ... and it shall have authority to relieve any such common purchaser, after due application, notice and hearing, from the obligation of purchasing gas of an inferior quality or grade or from purchasing gas from wells which for economic reasons are not at the time a practicable source of supply.
 Id. Sec. 105.
 Every common purchaser or common carrier of natural gas shall file with the commission a true and verified copy of the contract for the sale and purchase of gas entered into between the producer or producers and such common purchaser or common carrier, within 30 days after the making thereof.
 Id. Sec. 111.