**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0041n.06
Filed: January 13, 2005

**Nos. 02-2256; 02-2258**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **FERNDALE LABORATORIES, INC.,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | |
| **v.** | ) | **ON APPEAL FROM THE UNITED** |
| | ) | **STATES DISTRICT COURT FOR THE** |
| **SCHWARZ PHARMA, INC.,** | ) | **EASTERN DISTRICT OF MICHIGAN** |
| | ) | |
| **Intervenor-Defendant,** | ) | |
| **Intervenor-Appellant,** | ) | |
| | ) | |
| **BLOCK DRUG CO., INC.,** | ) | |
| | ) | |
| **Defendant-Appellant,** | ) | |
| | ) | |
| **REED & CARNICK DIVISION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Before: SUHRHEINRICH, GIBBONS, and SUTTON, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Ferndale Laboratories ("Ferndale") and Reed and Carnick ("R & C"), a division of Block Drug Company ("Block"), were parties to a supply agreement by which Ferndale sold a prescription cream to R & C. The supply contract contained a provision that prohibited either party from assigning the agreement without the prior written consent of the other party. After years of engaging in transactions pursuant to this agreement, Block entered into an asset purchase agreement with Schwarz Pharma, Inc. ("Schwarz") to sell all of R & C's assets to Schwarz, including the Ferndale supply agreement. Ferndale did not consent to

assignment of the supply contract.  To avoid offending the anti-assignment provision, Block then entered into a supplemental distribution agreement with Schwarz, whereby Block continued purchasing the prescription cream from Ferndale and, in turn, sold all of this cream to Schwarz for the same price.

Ferndale filed a breach of contract claim against Block in the United States District Court for the Eastern District of Michigan basing jurisdiction on diversity of citizenship.  Schwarz later intervened, and Ferndale amended its complaint to include a count against Schwarz for unjust enrichment.  All parties filed motions for summary judgment.  The district court granted summary judgment to Ferndale on the issue of Block's liability and denied the motions for summary judgment filed by Block and Schwarz.  After a bench trial, the district court awarded Ferndale a judgment of $8,304,000.00 against Block for breach of contract and $2,100,000.00 against Schwarz for unjust enrichment.

On appeal, Block asserts that it did not materially breach its supply contract with Ferndale and that, even if it had done so, the district court erred in calculating Ferndale's damages resulting from the breach.  Schwarz appeals the award of unjust enrichment damages to Ferndale.

For the reasons set forth below, we affirm the grant of summary judgment to Ferndale on the issue of Block's liability for breach of contract.  We conclude, however, that the court's calculation of damages for Block's contractual breach was clearly erroneous, and we remand this issue to the district court with instructions to enter judgment to Ferndale against Block in the amount of $216,499.00.  We also reverse the award of unjust enrichment damages to Ferndale against Schwarz and remand this issue to the district court with instructions to enter judgment for Schwarz.

**I.**

Ferndale manufactures the prescription cream Analpram. In 1987, Ferndale entered into a

supply agreement with R & C. The agreement gave R & C the right to market and distribute

Analpram under R & C's trade name, Proctocream, with the understanding that it would be a

product line extension of Block's own Proctofoam. Among the supply agreement's provisions was

an anti-assignment clause, which read:

> **Assignment**
>
> This Agreement shall not be assigned or transferred by either party except as
> provided herein without the prior written consent of the other party and otherwise
> shall be binding upon and inure to the benefit of the successors and assigns of the
> parties hereto. Either party may freely assign or transfer this Agreement to its
> wholly-owned subsidiary provided that it provides the other party hereto with written
> notice of such assignment, and provided further that assignor shall remain a
> guarantor of the performance and obligation of such assignee.

The agreement also contained a default provision, which provided:

> **Default**
>
> This Agreement may be terminated by either party hereto in the event of the breach
> or default ("Default") by the other party of the terms and conditions hereof; the party
> claiming such Default shall first give written notice to the defaulting party of the
> proposed termination of the Agreement, specifying the grounds therefore. The
> defaulting party shall have sixty (60) days from the date of such notice to cure such
> Default. If the Default is not cured during such period, this Agreement *shall
> terminate* at the expiration of such sixty (60) day period.

(emphasis added). Under the agreement and subsequent extensions, Ferndale agreed to supply

Analpram to Block until 1998.[1]

---

[1]The agreement also provided that Ferndale could continue distributing Analpram itself. We
will reference the cream at issue in the parties' supply agreement as Analpram throughout the

In June 1995, Block entered into an asset purchase agreement with a division of Schwarz. The purchase agreement provided that Schwarz would obtain Block's assets, including its supply agreement with Ferndale. Block then contacted Ferndale, seeking its consent to Block's assignment of the supply agreement to Schwarz. On June 22, 1995, Ferndale notified Block and Schwarz that it would not consent to an assignment of the supply agreement. Nonetheless, the closing of the Schwarz-Block asset purchase agreement took place on June 30, 1995. During the following week, Ferndale's counsel sent Block a letter stating that Ferndale believed Block's agreement with Schwarz violated the anti-assignment provision of the Ferndale-Block contract. Schwarz and Block then executed a supplemental distribution agreement, which provided that Block would continue ordering Analpram from Ferndale and would distribute the Analpram exclusively to Schwarz at the same price it paid Ferndale for the cream.

In late 1995, Ferndale filed a complaint in district court against Block alleging breach of contract. Schwarz intervened as a defendant. Ferndale's complaint alleged that Block breached its supply contract with Ferndale by contracting with Schwarz and that Schwarz was unjustly enriched by this arrangement. On March 31, 1997, the district court granted summary judgment to Ferndale on its breach of contract claim against Block, finding that Block had engaged in a "de facto assignment" of the supply agreement in violation of the agreement's anti-assignment provision. On September 30, 1998, the court denied Schwarz's motion for summary judgment on Ferndale's claim of unjust enrichment. It is around this period – three years after the closing of the asset purchase

opinion.

4

agreement between Block and Schwarz – that Ferndale finally stopped filling Block's orders for Analpram.

On September 5, 2002, following a bench trial, the district court found that Block's de facto assignment materially breached the supply agreement and that Ferndale was entitled to lost profits damages from Block and unjust enrichment damages from Schwarz. The court then entered judgment against Block in the amount of $8,304,000.00 and against Schwarz in the amount of $2,100,000.00. Block and Schwarz each filed a timely notice of appeal of the district court's grant of summary judgment to Ferndale and the court's bench trial decision.

**II.**

This court reviews a district court's order granting summary judgment *de novo*. *Laderach v. U-Haul*, 207 F.3d 825, 827 (6th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Accordingly, summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Laderach*, 207 F.3d at 828 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The parties do not dispute that Michigan law applies in this case.

Block presents two arguments as to why the district court erred in granting summary judgment to Ferndale for Block's breach of the supply contract. First, Block insists that there was a genuine issue of material fact as to whether it challenged the inclusion of the anti-assignment

provision in its contract with Ferndale. Second, Block claims that key provisions of the Uniform Commercial Code (U.C.C.) and its adoption in Michigan make the grant of summary judgment to Ferndale inappropriate.

**A.**

The district court noted that Block did not challenge the inclusion of the anti-assignment provision in its contract with Ferndale. Block claims that, in doing so, the court improperly credited the testimony of Ferndale's chairman, who stated that he insisted on the inclusion of the provision in the supply agreement. In support of its argument, Block cites the testimony of one of its product managers, who stated that he did not recall having a long conversation with the chairman of Ferndale about the transferability of the supply contract. Block also points to the deposition testimony of one of Ferndale's attorneys, who stated that he did not remember having a substantive discussion about the anti-assignment provision with Block's attorneys.

We decline to find that Block's quibble with an isolated portion of the district court opinion defeats the grant of summary judgment. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The parties do not dispute that the anti-assignment provision is part of the agreement that was executed between them. The motivation for the inclusion of this provision simply does not present an issue of *material* fact, which is required to defeat a motion for summary judgment. In addition, the contract contained an integration clause rendering the factual dispute regarding the contract inadmissable. *See UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 579

6

N.W.2d 411, 418 (Mich. Ct. App. 1998) (integration clause in written contract is conclusive and parol evidence is inadmissible to show agreement is not integrated in absence of fraud or incomplete agreement). Therefore, Block cannot defeat the grant of Ferndale's motion for summary judgment with this argument.

**B.**

Block also argues that summary judgment for Ferndale was inappropriate because this case is governed by the U.C.C., specifically U.C.C. § 2-210(2) (providing that "unless otherwise agreed, all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance") and by Michigan's adoption of U.C.C. § 2-210(2) at Mich. Comp. Laws § 440.2210(2). Relying on these provisions, Block contends that its distribution arrangement with Schwarz is permitted because the U.C.C. favors the free assignability of contractual rights except in the limited circumstances specified by the code.

We conclude that Block's position is untenable. The U.C.C. provision upon which Block relies enables assignment of rights *unless the contracting parties otherwise agree*. U.C.C. § 2-210(2); Mich. Comp. Laws § 440.2210(2). By including an anti-assignment clause in their supply contract, Block and Ferndale necessarily agreed otherwise, rendering the provisions cited by Block inapplicable to the instant case.

Block next asserts that "[p]ursuant to UCC § 2-210(3), adopted in Michigan as MCLA § 440.2210(3), a general anti-assignment clause bars only the delegation of the assignor's duties."[2] Michigan law, as in effect at the time the parties contracted in 1987, did provide that, "[*u*]*nless the circumstances indicate the contrary* a prohibition of assignment of 'the contract' is to be construed as barring only the delegation to the assignee of the assignor's performance." Mich. Comp. Laws § 440.2210(3) (1987) (emphasis added).

We believe that this provision does not defeat the grant of summary judgment to Ferndale. Ferndale entered into the supply agreement with Block with the express purpose that Block would distribute Analpram as a companion product to its own hemorrhoid treatment. The supply agreement was abundantly clear that, while Block acquired the *right* to market Analpram, it also had the *duty* to distribute Analpram as a product line extension of its own Proctofoam:

> WHEREAS, [Block] intends to offer for sale [Analpram] . . . as a line extension to its Proctofoam and therefore anticipates having certain requirements for the manufacture thereof; and
>
> WHEREAS, Ferndale is willing to supply [Analpram] to [Block] for purposes of such resale . . . .
>
> [Block] *shall market* [Analpram] under its own proprietary trade names and labels . . . .

---

[2]Block does not cite to the version of the U.C.C. and Michigan Compiled Laws upon which it is relying. We will presume that Block is relying on the provisions in effect at the time of contracting rather than to the current versions of those provisions, which relate exclusively to the creation, attachment, perfection, or enforcement of a security interest in the seller's interest under a contract. *See Antrim Res. v. Pub. Serv. Comm'n*, 446 N.W.2d 515, 521 (Mich. Ct. App. 1989)("The Supreme Court of the United States has stated that 'the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it.'") (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 429-30 (1934)).

(emphasis added). Therefore, in light of the instruction for reading anti-assignment provisions given in Mich. Comp. Laws § 440.2210(3) (1987), the anti-assignment provision of the supply agreement barred Block from delegating the performance of its duty to market Analpram as a product line extension of Proctofoam. Block breached the contract by engaging in such a delegation. Even if we read the supply agreement as conveying to Block only the right – and not the duty – to market Analpram, we believe that § 440.2210(3) (1987) would not relieve Block from liability for breach of contract. Section 440.2210(3) contains the explicit condition that its own terms do not apply if "the circumstances indicate the contrary." As we have previously detailed, the circumstances surrounding the execution of the supply agreement with the anti-assignment provision speak clearly to the fact that at least one central aim of the provision was to ensure that only Block had the right to market and distribute Analpram in the form of Proctocream. Block violated the provision by effectively assigning this right to Schwarz. Accordingly, we affirm the grant of summary judgment to Ferndale on the issue of Block's breach of contract.

## III.

Block next challenges the district court's conclusion of law that the company materially breached its supply contract with Ferndale, an issue that we review *de novo*. *See Burzynski v. Cohen*, 264 F.3d 611, 616 (6th Cir. 2001). The court reached this conclusion after considering the *Walker* factors provided by the Michigan Supreme Court to determine the materiality of a contractual breach:

> (a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;
> (b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;

9

> (c) The extent to which the party failing to perform
> has already partly performed or made preparations for
> performance;
> (d) The greater or less hardship on the party failing to
> perform in terminating the contract;
> (e) The wilful, negligent or innocent behavior of the
> party failing to perform;
> (f) The greater or less uncertainty that the party
> failing to perform will perform the remainder of the contract.

*Walker & Co. v. Harrison*, 81 N.W.2d 352, 355 (Mich. 1957) (quotation omitted). The district court also considered the extent to which Block's behavior comported with good faith and fair dealing.

Block does not challenge the methodology relied upon by the district court. Rather, it argues that it did not materially breach the contract under the *Walker* factors. After considering the relevant Michigan law, we do not find Block's position to be persuasive, and we agree with the district court that Block materially breached its supply contract with Ferndale. Under the anti-assignment provision, Block could not assign its right to receive *and distribute* Analpram without first obtaining Ferndale's consent to do so. Through its asset purchase agreement and distribution arrangement with Schwarz, Block effectively assigned away its rights under the supply contract, which enabled Schwarz ultimately to assume the crucial rights of marketing and selling Analpram. Therefore, Block materially breached the Ferndale-Block supply contract by entering into the agreement with Schwarz.

## IV.

We now address Block's appeal of the district court's award of damages to Ferndale. Specifically, Block contends that the court erred in calculating lost profits and deciding that Ferndale did not mitigate damages. This court reviews the district court's calculation of damages for clear

10

error because "'[q]uestions raised concerning damages are essentially questions of fact.'" *Canderm*

*Pharmacal, Ltd. v. Elder Pharms., Inc*., 862 F.2d 597, 606 (6th Cir. 1988) (quoting *Duty v. U.S.*

*Dep't of Interior*, 735 F.2d 1012, 1014 (6th Cir. 1984)); *see also Adkins v. Asbestos Corp*., 18 F.3d

1349, 1351 (6th Cir. 1994) (reviewing award of contract damages for clear error).

**A.**

The district court held that Ferndale was entitled to damages from Block in the amount of

the monetary value of the supply contract had Block fully performed under it. The court then

calculated the damages due to Ferndale by (1) concluding that Ferndale had the right to terminate

the supply contract when Block breached the contract in 1995 and (2) reasoning that damages should

constitute the profits Ferndale would have earned if the company "took back" Analpram from Block

at that time and either sold the product itself or through another distributor. As a result, the district

court awarded Ferndale damages against Block in the amount of $8,304,000.00, which represented

eighty percent of the lost profits calculation provided by Ferndale's expert, Dr. Richard Rozek.[3]

Ferndale defends the district court's calculation of damages, arguing that full performance

under the contract must recognize that Block breached the anti-assignment provision *and* the default

provision, which provided that the contract terminated if a party breached the contract, was given

notice of the breach and a sixty-day opportunity to cure by the non-breaching party, but nevertheless

---

[3]The court reached this conclusion in two steps. First, the district court credited Rozek's lost profits calculation ($10,380,000.00). Second, the court rejected Rozek's testimony that Ferndale could have sold the same quantity of Analpram from July 1995 to September 1998 as Schwarz sold of the product during that period. Instead, the court decided that Ferndale, through itself or through another distributor, could have captured eighty percent of the Analpram market during this time. The district court did not specify how it arrived at the eighty percent calculation.

remained in default. Block does not challenge the notion that damages should be awarded based on its full performance under the supply agreement. Block does contend, however, that, such damages should be aimed at placing Ferndale in the position it would have occupied if Block had not breached the contract. Consequently, Block claims that Ferndale's damages should be limited only to the difference between the profits Ferndale would have earned if Block continued to perform under the contract (i.e., had Block, not Schwarz, sold Analpram) from July 1995 to September 1998 and the profits that Ferndale actually earned during that same period (when Block was distributing Analpram to Schwarz to sell).[4] We agree with Block's proposed theory of damages.[5]

It is a fundamental tenet of contract law that "[t]he remedy for breach of contract is to place the non-breaching party in as good a position as if the contract had been *fully performed*." *Corl v. Huron Castings, Inc.*, 544 N.W.2d 278, 280 (Mich. 1996) (emphasis added). Therefore, "the goal in contract law is not to punish the breaching party, but to make the nonbreaching party whole." *Id.* Applying this principle to the case at hand, the district court should have only awarded damages that

---

[4]According to Block's expert at trial, Julie Davis, the measure of damages under this method is $216,499.00.

[5]In so doing, we expressly reject Ferndale's claim that Block breached the anti-assignment provision *and* the default provision. Quite simply, the default clause contained in the supply agreement did not give rise to a duty or obligation on the part of either party and, therefore, was not a contractual provision that even could be breached. The purpose and function of the default provision was merely to provide the non-breaching party with a remedy in the event that *other* contractual provisions were breached.

We also find no merit to Ferndale's argument that a calculation of Block's full performance under the supply agreement requires consideration that the default provision be honored. Contrary to Ferndale's position, full performance considers how the parties would have performed under the contract *in the absence of contract termination*.

arose naturally from Block's breach of the supply contract. *See Harris v. Citizens Ins. Co.*, 366 N.W.2d 11, 12 (Mich. Ct. App. 1983). Ferndale expected Block to market and sell Analpram. Block breached the contract on June 30, 1995, by enabling Schwarz to market and sell Analpram. Therefore, the court should have awarded damages in an amount equal to the profits Ferndale would have generated if Block itself marketed and distributed Analpram (instead of acting as a "pass through" to Schwarz) from June 30, 1995, to September 1998, when Ferndale ceased supplying Block with Analpram, minus the profits that Ferndale actually earned as a result of Schwarz's distribution of Analpram during this period.

In calculating lost profits in the manner that it did, the district court found "that both Ferndale and Block contemplated that at the time the parties entered into the Supply Agreement, damages, including lost profits, would be at issue if the contract was breached, given that Ferndale's interest in contracting with Block was to increase its sales." The district court then attempted to apply a principle adopted by Michigan courts from *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854): "The general rule in breach of contract actions is that damages recoverable for a breach of contract are those arising naturally from the breach or those which were within the parties' contemplation at the time of contracting." *Harris*, 366 N.W.2d at 12; *see also Lawrence v. Will Darrah & Assocs., Inc*., 516 N.W.2d 43, 48 (Mich. 1994) (noting that, under the *Hadley* rule, the damages recoverable for breach of contract are those that naturally arise from the breach or that "can *reasonably* be said to have been in contemplation of the parties at the time the contract was made") (quotation omitted). While the parties may have contemplated lost profits as damages for a breach of the supply agreement, the only support for the proposition that the parties reasonably

contemplated lost profits using the methodology adopted by the district court is Ferndale's assertion that, but for Block's breach of the termination and anti-assignment provisions of the contract, Ferndale would have sold Analpram itself.

Ferndale put forth no evidence showing that the parties ever contemplated such damages or that such damages reasonably could have been said to be within the contemplation of the parties. The only evidence to which Ferndale refers in support of such a damage calculation is the testimony of its chairman and CEO James T. McMillan II that Block's obligation when the supply agreement terminated was to return the cream to Ferndale. While this testimony may describe Block's responsibility, it says nothing about Ferndale's intentions to sell Analpram itself or use another distributor or choose any other course of action. In addition, and perhaps even more significantly, the actual events of this case belie the district court's theory. Block breached the supply agreement – and Ferndale became aware of such breach – in 1995. Ferndale nonetheless continued distributing Analpram to Block until 1998. Therefore, at the time of the breach, Ferndale did not cease selling Analpram to Block and begin distributing Analpram itself. Rather, Ferndale continued to allow Block to distribute Analpram for *three years* after the breach.[6] These facts weaken Ferndale's assertion that, but for Block's contractual breach, it would have taken measures to distribute

---

[6]In its brief, Ferndale states that it continued to perform for years beyond Block's breach because it feared that Block would bring suit against Ferndale for contractual breach if Ferndale ceased supplying Analpram. Besides the fact that we see no evidence in the record that Block somehow coerced Ferndale into supplying Analpram, we note that any perception of vulnerability by Ferndale was completely unfounded because "[h]e who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform." *Ehlinger v. Bodi Lake Lumber Co.*, 36 N.W.2d 311, 316 (Mich. 1949) (quotation omitted).

Analpram itself. The damage calculation of Ferndale's expert, Dr. Rozek, thus rests on a course of conduct that lacks factual support in the record.

Therefore, the district court's calculation of Ferndale's damages was clearly erroneous, and we vacate the district court's award of damages against Block to Ferndale. The only evidence presented at trial that we can discern with respect to the correct theory of damages was that of Block's expert, who calculated that Ferndale would have received $216,499.00 over the duration of the contract had Block continued selling Analpram itself and not acted as a "pass-through" to Schwarz. Ferndale does not assert that it ever posited its own calculation of damages under this theory, and indeed our review of the record included in the joint appendix, including Ferndale's proposed findings of fact and conclusions of law to the district court, failed to reveal any such calculation. Rather, Ferndale only offered evidence regarding the amount of damages to which it claimed it was entitled under the "product take back" theory.

"It has long been the general rule of Michigan that in an action for breach of contract the burden is upon the plaintiff to show damages." *Benfield v. H.K. Porter Co.*, 137 N.W.2d 273, 274 (Mich. Ct. App. 1965) (citing *Callender v. Myers Regulator Co.*, 230 N.W. 154 (Mich. 1930)). By failing to offer evidence of the difference in profits Ferndale would have made if Block continued distributing cream until 1998 and the profits actually reaped during the period of Block's breach, Ferndale did not even attempt to meet its burden of proof under the correct theory of damages. Because Block did offer evidence under the correct damages theory, we will accept its calculation and remand this issue to the district court with instructions to enter judgment to Ferndale against Block in the amount of $216,499.00.

15

**B.**

Block next argues that Ferndale failed to mitigate its damages because it continued supplying Block with Analpram after Block breached the supply contract. Under Michigan law, "a breach of contract imposes on the plaintiff a duty to mitigate damages. The defendant bears the burden of proving a failure to mitigate." *Lorenz Supply Co. v. Am. Standard, Inc.*, 300 N.W.2d 335, 339 (Mich. Ct. App. 1980); *see also Reinardy v. Bruzzese*, 118 N.W.2d 952, 953 (Mich. 1962) (noting that the burden is on the defendant to prove that plaintiff failed to mitigate). "Mitigation of damages is a legal doctrine that seeks to minimize the economic harm arising from wrongdoing." *Morris v. Clawson Tank Co.*, 587 N.W.2d 253, 263 (Mich. 1998).

We cannot agree with Block's assertion. As explicitly provided by the supply agreement's default provision, the agreement terminated in 1995 after Ferndale gave Block written notice of Block's breach and the sixty-day period for Block to cure its breach had elapsed.[7] Upon contract

---

[7]As previously mentioned, the agreement's default provision stated that the contract "shall terminate" if one party breached the contract, the non-breaching party gave notice of the breach and a sixty-day opportunity to cure, and the breaching party nevertheless remained in default. We agree with the district court that Ferndale gave sufficient notice under the default provision either through its July 7, 1995, letter to Block, stating that it believed the Schwarz-Block distribution arrangement violated the anti-assignment provision of the supply agreement, and as a result, "Ferndale will declare [Block] in default in accordance with the Agreement," or through the mailing of its complaint filed in district court to Block later that month.

Therefore, because Ferndale provided sufficient notice, and Block did not cure its default within sixty days of such notice, the supply agreement terminated. In reaching this conclusion, we reject Block's claim that Ferndale's continued sale of Analpram to Block for three years after the breach occurred effectively waived Ferndale's right to terminate the supply agreement. In fact, Ferndale lacked any *right* to terminate the supply agreement. The agreement does not give the non-breaching party the right to terminate the contract upon the happening of certain, specified pre-conditions. Rather, as the plain language of the agreement reads, the agreement "shall terminate" upon the occurrence of the stated conditions.

termination, Ferndale – in the absence of any mitigation – could have stopped selling any Analpram to Block, and sued Block for damages in the amount of profit Ferndale would have reaped if Block had performed under the balance of the contract. Ferndale instead continued selling Analpram to Block, thereby making Block only liable for damages in the amount of profit Ferndale would have received had Block not breached the contract minus the profits actually received as a result of "pass through" sales to Schwarz. Consequently, Block has not met its burden of demonstrating Ferndale's failure to mitigate damages.

## V.

Schwarz challenges the award of unjust enrichment damages to Ferndale in the amount of $2,100,000.00. Specifically, Schwarz contends that it was not enriched to the detriment of Ferndale because Ferndale continued to receive profits from the sale of Analpram during the period that Block was distributing the cream to Schwarz. We find Schwarz's position to be persuasive.[8]

Under Michigan law, the elements of an unjust enrichment claim are: "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993) (citing *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991)). The first element is satisfied in this case, Schwarz received a benefit from Ferndale, derived from Ferndale's own continued willingness to sell to Block. The second element, however, is not satisfied; no inequity

---

[8]To the extent that Schwarz appeals the denial of its motion for summary judgment, we do not consider such arguments because "where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed." *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990).

resulted to Ferndale as a result of Schwarz's benefit. Most notably, Schwarz paid for all of the Analpram it ever received, and therefore we cannot conclude Ferndale suffered any inequity. Ferndale was paid, albeit by Block, for the Analpram that ultimately ended up in Schwarz's control. Any inequity to Ferndale, therefore, must result exclusively from the fact that Schwarz, and not Block, ultimately distributed the product. Our award of damages to Ferndale against Block provides Ferndale with the profits the company would have received if Block had not breached the supply agreement but instead had continued distributing Analpram. Accordingly, we vacate the judgment of $2,100,000.00 against Schwarz and remand this issue to the district court with instructions to enter judgment for Schwarz.

## VI.

For the foregoing reasons, we affirm the grant of summary judgment to Ferndale on the issue of Block's breach of contract. We vacate the judgment against Block entered by the district court and remand this issue to the district court with instructions to enter judgment in favor of Ferndale and against Block in the amount of $216,499.00. We also vacate the judgment entered against Schwarz and remand with instructions to the district court to enter judgment for Schwarz on Ferndale's unjust enrichment claim.

**SUHRHEINRICH, J., dissenting:** I concur in the majority opinion with the exception of its resolution of the unjust enrichment claim in Section V. I do not agree with the majority's holding that Schwarz was not unjustly enriched to the detriment of Ferndale because Ferndale continued to receive profits from the sale of Analpram during the period that Block was distributing the cream to Schwarz, and that any inequity to Ferndale resulted exclusively from the fact that Schwarz, not Block, ultimately distributed the product.

The majority fails to mention that Ferndale possesses a unique asset, a prescription product containing two active ingredients, pramoxine and hyrocortisone acetate in a 1%/1% combination cream, that only Ferndale is authorized to manufacture by the United States Food and Drug Administration ("FDA"). As the district court found, "only Ferndale had the right to manufacture this cream under the ANDA [Abbreviated New Drug Application]." By virtue of the Asset Purchase Agreement and Distribution Agreement[9] for which it paid Block $106 million, Schwarz acquired the right to purchase and market a unique asset that it could not otherwise obtain absent direct negotiations with Ferndale. Thus, at a minimum, Schwarz acquired that right at the price negotiated between Ferndale and Block. In other words, although "Schwarz paid for all of the Analpram it ever received," it paid for it at the price negotiated by Block, thereby depriving Ferndale of the opportunity to negotiate a higher price from Schwarz. Schwarz acknowledges as much in its brief:

---

[9]The Asset Purchase Agreement reflects that Block agreed to sell nearly all of the Reed & Carnick assets to Schwarz, including the Ferndale/Reed & Carnick Supply Agreement. In its findings of fact, the district court explicitly found that "[a]s part of the Asset Purchase Agreement, Schwarz acquired the right to market the 1%,1% Protocream, either by assignment of the Supply Agreement or by devising a mechanism whereby Schwarz would effectively have the right to market the Protocream." Findings of Fact and Conclusions of Law, p. 9.

> Both Block and Schwarz in good faith believed that Ferndale's consent to the assignment of the Supply Agreement could be obtained because this type of assignment clause is standard in the industry. The clause works to assure an assignee can meet the expectations of the agreement. (R. 140, Troup 2/26/99 Trans. at 56-57, Apx. 880-81) Such clauses are often present to protect the contract manufacturer and allow a break in the contract to permit a price increase. Such clauses also protect the contract manufacturer by not allowing assignment to a company that would significantly reduce sales of the product. (R. 140 Troup, 1/26/99 Trans. at 56, Apx. 880) The parties believed that because Schwarz could meet those expectations, Ferndale would consent. .... 880-82, 890.

(Intervenor Br. at 5).[10]

Moreover, Schwarz deprived Ferndale of Ferndale's right to consideration for its permission to sell the exclusive pharmaceutical product. Schwarz paid Block to assume the crucial rights of marketing and selling Analpram. In other words, Schwarz received a benefit from Ferndale to which it was not entitled, the right to market and sell the 1%/1% cream. *See Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993) (citing *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991) (stating items elements of unjust enrichment under Michigan law)). The equities do not favor Schwarz either. As the district court found "Schwarz had taken the risk that Ferndale might not consent to the asset sale and then willingly engaged in a Distribution Agreement that Schwarz knew circumvented the assignment provision." Findings of Fact and Conclusions of Law, p. 42 *See Michigan Educ. Employees Mut. Ins. Co. v. Morris*, 596 N.W.3d 142, 151 (Mich. 1999) (ruling that unjust enrichment is an equitable doctrine that requires a person who has been unjustly enriched at the expense of another to make restitution to the other); *see also McFerren v.*

---

[10]The district court held that "Ferndale lost control over who had the right to sell its unique product. Ferndale also lost the ability to negotiate the marketing of its product with another company." Findings of Fact, p. 24.

*B&B Inv. Group*, 655 N.W.2d 779, 783 (Mich. Ct. App. 2002) ("A court acting in equity looks at the whole situation and grants or withholds relief as good conscience dictates.") (internal quotation marks omitted).

As the district court found, the selling price for the right to market Analpram "was somewhere between $4.5 (Davis) and $9.6 (Rozek) million." Findings of Fact, p.42. In determining that Schwarz was unjustly enriched by $2.1 million, the district court calculated that Schwarz earned $6.6 million ($8.5 million minus the selling costs) from July 1995 until Ferndale withdrew the product. The district court then subtracted the selling price of the asset which it set at the lower amount, $4.5 million, apparently giving weight to Schwarz's argument that it should not be held responsible for the selling price because it lost money. To my mind, the fact that Schwarz lost money on the asset purchase is irrelevant to the calculation of unjust enrichment. Schwarz's mismanagement of the asset does not undermine the fact that Schwarz deprived Ferndale of the right to negotiate, and receive a price for the sale of its asset, which Schwarz apparently valued at approximately $4.5 million. Thus, I think that in calculating unjust enrichment damages, the district court erred in subtracting the $4.5 million from the $6.6 million. I would therefore award Ferndale $6.6 million in unjust enrichment damages against Schwarz.

For these reasons, I dissent from Section V of the majority opinion.