## EHLINGER *v.* BODI LAKE LUMBER COMPANY.

1. Logs and Logging—Rescission of Contracts—Fraud.

In suit for cancellation of contract for sawmill operations, cancellation of subsequent chattel mortgage given to defendant partnership and of plaintiff's indebtedness to it, on ground of fraud in that defendant was not the owner of land from which timber was to be cut, evidence *held,* to justify trial court's finding that before and at the time the contract was entered into plaintiff knew that · defendants were only contract purchasers of the property involved and that plaintiff was not misled by any representation to the contrary, hence, plaintiff was not entitled to rescission because of the alleged fraud.

2. Same—Damages—Breach of Contract.

Sawmill operator who had contracted to cut all logs furnished by defendant partnership from timber cut on nearby lands to which plaintiff had moved a stationary sawmill was not entitled to damages on ground of failure of full performance, where he first breached the contract by failing to pay wages when due as provided by law and ceased operations while logs were yet being supplied to him in sufficient quantity to continue operations for a few days, and failed to pile the lumber as required by contract, and contract did not require defendant partnership to supply him with financial means with which to meet costs of operation.

3. Contracts—Failure of Performance.

He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform.

REFERENCES FOR POINTS IN HEADNOTES
[1] 23 Am. Jur., Fraud and Deceit, § 143.
[2] 12 Am. Jur., Contracts, §§ 343, 381, 386.
[3] 12 Am. Jur., Contracts, § 343.
[4] 12 Am. Jur., Contracts, § 386; 20 Am. Jur., Evidence, § 147.
[5] 12 Am. Jur. Contracts, § 440.

4. Same—Damages—Prevention of Performance.

In a suit for damages for being prevented from performing a contract, it is incumbent upon plaintiff to make out the contract alleged and he has the burden of showing performance, or, in default, that the defendant wrongfully prevented such performance.

5. Logs and Logging—Damages—Burden of Proof—Performance.

In sawmill operator's suit for rescission of his contract with lumber company and injunction against foreclosure of chattel mortgage by latter, record failed to show he sustained his burden of showing right to damages for defendant's failure of full performance, where it appears that after chattel mortgage had been given by him, both he and the company ran out of funds with which to continue operations.

Appeal from Luce; Runnels (Herbert W.), J. Submitted December 16, 1948. (Docket No. 67, Calendar No. 44,101.) Decided February 28, 1949.

Bill by Anthony Ehlinger against Bodi Lake Lumber Company, a copartnership, for injunction restraining foreclosure of a chattel mortgage and cancellation of contract and chattel mortgage. Cross bill by defendants against plaintiff for foreclosure of mortgage. Decree for defendants. Plaintiff appeals. Affirmed.

*Paul Rahm* (*Edward J. Dundon,* of counsel), for plaintiff.

*Adams & Fenlon,* for defendants Brown.

*Hugh V. Williams,* for defendants McCrea.

North, J. In this case plaintiff by his amended bill of complaint sought certain injunctive relief, cancellation of a contract he had entered into with defendants, cancellation of a chattel mortgage he had given to the defendant partnership and of his in-

debtedness to it, and for a money judgment against defendants. Such relief was sought on 2 separate theories: (1) cancellation on the ground of alleged fraud on the part of defendants with resulting damage to plaintiff, and (2) damages suffered by plaintiff as the result of defendants' breach of their contract with plaintiff. Except as to defendants Beyersdorff, who were defaulted for nonanswer, issue was framed by defendants' answers wherein the material allegations of the bill were denied. Issue was also framed on the cross bill of certain defendants wherein they sought relief against plaintiff. Following a hearing on the merits, a decree was entered dismissing the bill of complaint and in accord with the relief sought in the cross bill it was decreed that "pursuant to a certain chattel mortgage" plaintiff as of September 30, 1944, was indebted to defendants in the sum of $24,722.20, and that foreclosure of the chattel mortgage was authorized. Plaintiff has appealed.

In 1942, defendants McCrea and Brown purchased a large tract of land in Luce county on land contract at a price of $65,000. There was a down payment of $20,000 and subsequently a further payment of $23,000. The contract described the land in 8 separate parcels or groups and provided:

"It is understood and agreed that second parties shall have the right to remove the timber from any one or more of the above groups but only when each said group shall have been paid for in full in advance. The amount to be paid for each group of said land is as follows: (the amount per group being here specified)."

For some years plaintiff had owned and operated sawmills and had done business with defendant Herman Beyersdorff, who also was experienced in the timber and lumber business. Following some con-

ferences between Herman Beyersdorff and Thomas Brown and also between Brown and Duncan McCrea relative to entering into some arrangement for cutting the timber on a portion of the land which McCrea and Brown were purchasing on the above-noted contract, Beyersdorff approached plaintiff in regard to moving his stationary sawmill from Iron River in Iron county to the location of the lands above mentioned near Bodi lake in Luce county. Incident to negotiations between Beyersdorff and plaintiff relative to the latter entering into a contract under which he would operate his sawmill, it was understood the timber would be cut and the logs delivered by defendants to the Luce county site of plaintiff's sawmill. In these preliminary negotiations Beyersdorff represented to plaintiff that the individual male defendants "owned" the timber lands involved in the transaction.

The defendant Bodi Lake Lumber Company was a partnership entered into by the individual defendants. The written partnership agreement purports to have been signed December 27, 1943, but evidently it was in consummation of an earlier oral agreement reached in August, 1943. In the written partnership agreement it was provided: "Herman Beyersdorff agrees * * * to assume the complete management of the logging and manufacturing end of said logging and manufacturing operations of said business." A written contract dated November 22, 1943, was entered into by the Bodi Lake Lumber Company with plaintiff. In part the contract provided:·

"WHEREAS, first party is the owner of certain timber lands in Luce county, Michigan, consisting of 1,600 acres more or less, on which there is located approximately 10,000,000 feet of timber and intends to have the said timber thereon cut, skidded and delivered at a certain point to be designated by second

party, and is desirous of having the logs sawn into lumber, and

"WHEREAS, second party is the owner of a stationary steam saw mill and is desirous of sawing the logs of first party into lumber.

"Now THEREFORE, It is agreed by and between the said parties as follows: * * * .

"5. First party agrees to deliver said logs in hot pond located at mill site.

"6. First party agrees to pay said second party for sawing said lumber at the following rate:

$13 per M lumber scale as determined according to scale and transfer, together with edgings, slabs, sawdust and waste.

"7. First party agrees to pay second party on the first and 15th of each month for the lumber sawn. * * *

"10. Second party agrees to saw the entire output of logs removed from the holdings in Luce county, Michigan, belonging to the Bodi Lake Lumber Company, it being the intention of the parties hereto, that the mill operated by second party is to be utilized for the manufacture of the lumber from all of the timber owned by said first party. It is further agreed that second party will not saw for anyone other than first party until the entire holdings belonging to first party have been manufactured into lumber."

On the same date as that of the foregoing contract, defendants McCrea and Brown entered into a land contract to sell at a purchase price of $71,-800 land therein described to the Bodi Lake Lumber Company. This property which the partnership contracted to purchase from defendants McCrea and Brown consisted of approximately 1,600 acres out of the larger parcel which McCrea and Brown were purchasing on contract. Except for a down payment of $10, the Bodi Lake Lumber Company was to make payments on its land contract out of

moneys received for lumber products sold from the premises, as provided in the contract.

It was prior to the date of any of the foregoing agreements and in the summer of 1943 that plaintiff had the preliminary negotiations with Herman Beyersdorff which led to the ultimate contractual relations between plaintiff and the partnership. As a result of the negotiations, and before the final contract was entered into, plaintiff began moving his mill in August, 1943, and completed moving about the middle of the following November. Ultimately it was decided that a larger mill than first contemplated should be constructed. This led to the construction of a larger mill and the purchase by plaintiff of considerable additional material and equipment; but the mill was finally ready for sawing lumber about April 1, 1944. It was operated from that time until September 9, 1944. During this period plaintiff sawed 2,645,795 feet of lumber. Plaintiff claims (but defendants deny) that cessation of his operating the sawmill on the above date was due to the fact that defendants stopped furnishing logs as provided in their contract with plaintiff; and because plaintiff was informed he would have to stop operations by defendant Beyersdorff, who testified:

"When I got orders from Mr. McCrea through Mr. Whitney to stop cutting the reason given was that they wanted to get their stumpage. * * * We hadn't paid any stumpage up to that time (for which approximately $12,000 was due). All the money we got so far went for expenses of sawing and logging the lumber. * *. * I informed him (plaintiff) on the 9th of September. I told Mr. Ehlinger we couldn't cut any more timber. I was stopped from cutting it down. I couldn't deliver any more because we hadn't any stumpage. We were short of money. * * * I told him we just had to stop cutting timber. I was ordered to quit, we hadn't paid

any stumpage so far and we may start up again in 3 or 4 weeks. Right now we couldn't go any farther, we didn't have money on hand to cut any more timber and bring it in."

The mill was not operated after September 9, 1944. In December, 1944, there was a meeting in Newberry between plaintiff, Beyersdorff and Brown at which the matter of continued operations was discussed and which discloses quite conclusively that the real reason why operations had to be suspended was because neither plaintiff nor the partnership had financial means with which to continue operation of plaintiff's sawmill or to pay the partnership's indebtedness for stumpage. Plaintiff claims it was at this December meeting he first learned the partnership was purchasing the land on contract.

Beyersdorff's notice or order to plaintiff above noted was seemingly due to the fact that a Mr. Whitney, acting for McCrea, or as a successor to McCrea's interest, ordered Beyersdorff to stop cutting the timber because payment of the stumpage was not being made as provided in the land contract under which the partnership was purchasing the property from defendants McCrea and Brown. Instead, the money received for lumber and other products was being used to meet expenses of operation. Seemingly such use of the money was due to the fact that early in the negotiations with plaintiff it was understood by Beyersdorff and Brown that plaintiff did not have sufficient financial means to perform his part of the undertaking; and in consequence, notwithstanding plaintiff's contract did not provide that defendants should assist him financially, funds were advanced for plaintiff's needs, first by Beyersdorff and later by the Bodi Lake Lumber Company. To secure payment of such moneys, plaintiff on February 8, 1944, gave a chattel mortgage to the Bodi

Lake Lumber Company in the amount of $26,000 covering plaintiff's mill property. It was this mortgage that plaintiff alleged defendants threatened to foreclose and against which foreclosure plaintiff prayed for an injunction. Defendants provided plaintiff with a total of more than $60,000. It is stipulated in the record that after deducting credits due plaintiff for lumber sawed and other items, there was a balance of advancements by defendants, or some of them, to plaintiff of $24,722.20.

It is plaintiff's theory and claim that if the Bodi Lake Lumber Company had actually been the owner in fee instead of a contract purchaser of the lands in question, it would not have been required to cease cutting the timber and delivering the logs to plaintiff's mill. Plaintiff claims in this respect a fraud was perpetrated on him by his having been informed that the parties who formed the partnership "owned" the land in question, that this misrepresentation, stated in plaintiff's contract, was relied upon by plaintiff, and induced him to enter into his contract with the Bodi Lake Lumber Company. Hence, he sought rescission of his contract and damages on the ground of fraud.

The trial court denied rescission, and we think rightly so, because in consequence of the following facts the trial judge concluded that before and at the time plaintiff entered into his contract of November 22, 1943, with the partnership, plaintiff knew that the Bodi Lake Lumber Company was not the fee owner of the lands but only a contract purchaser and on conditions which required contract payments as the products produced were sold and payment therefor received. The relevant facts in brief are as follows:

In August, 1943, when plaintiff began moving his mill to the Bodi lake site, defendants claim and the trial judge found plaintiff was informed by Brown

that as yet no contract had been entered into by the
other parties relative to lumbering the lands in-
volved; and, while plaintiff denied having done so,
the trial court found plaintiff had signed a writing
which, in part, was proven by an unsigned carbon
copy in which it was stated that plaintiff was so in-
formed by Brown, and further that:

"Knowing this we have taken a chance and have
moved our equipment on the property, hoping that
Herman Beyersdorff and Tom Brown (evidently
meaning defendants McCrea and Brown) would en-
ter into a contract."

Although denied by plaintiff, the record also dis-
closes that before the contract with plaintiff was
signed he was present with other parties in an at-
torney's office at an extended conference at which all
of the details of these interrelated transactions were
discussed at length, including the contract purchase
by the partnership of the land from defendants Mc-
Crea and Brown. These two contracts were pre-
pared and on November 22, 1943, were taken to Bodi
lake where plaintiff signed his contract with the
Bodi Lake Lumber Company. Plaintiff, Beyers-
dorff and Brown were present, and both contracts
were read aloud. The McCrea-Brown land contract
executed with the Bodi Lake Lumber Company
plainly provided:

"That the parties of the first part for and in con-
sideration of the sum of $71,800 to be to them duly
paid as hereinafter specified and the mutual cove-
nants to be performed by the respective parties
hereto as hereinafter expressed, hereby agree to sell
and convey to the said party of the second part
(Bodi Lake Lumber Company) all the following
described land  *  *  *  for the sum of $71,800
which the said party of the second part hereby
agrees to pay to said parties of the first part and

shall pay for the same as follows: $10 upon the execution of this contract and the remaining $71,790 as follows:   *   *   *

"It is further agreed between the parties that the said party of the second part will pay to said parties of the first part a certain share of all moneys received from the sale of any and all timber, lumber or wood products or money received as an advance or down payment on any contract of sale of the same taken from the said described land;   *   *   *   that said payments will be paid to parties of the first part within 10 days after the receipt of payment from the buyer or buyers of said timber, lumber or wood products and a share of the sales price determined on the type or kind of timber, lumber or wood products sold as follows:

"$20 per M of the sales price received for any and all veneer stumpage sold.   *   *   *   $1 per cord for cord wood or pulp wood sold.   $15 per thousand for each and every thousand feet of lumber sold."

On the record before us pertinent to rescission on the ground of alleged fraud, we would not be justified in reversing the holding of the trial judge, who, in the opinion filed in this case, in part said:

"My reaction is that the plaintiff, a man who had been in the lumbering or milling business for many years, intelligent and not hard of hearing, and very much interested in the whole matter, fully understood the exact situation long before and at the time he entered into the written contract. He sat in the office of Brown and Fenlon one full day while this entire transaction was discussed, including the Olds contract (under which McCrea and Brown were purchasing). He was in the office of the Bodi Lake Lumber Company on November 22, 1943, when the contract with Bodi Lake Lumber Company and Brown and McCrea to the Bodi Lake Lumber Company were read aloud and still he says he had no knowledge or understanding of the situation. What credibility can this court give to his testimony un-

less confirmed by testimony which the court can believe. Listening to Beyersdorff's testimony, called as an adverse witness, a defaulted defendant, considering the testimony of a hesitant witness (Walter Schjoth), that Beyersdorff would testify for plaintiff and plaintiff for Beyersdorff, in a lawsuit then pending in Iron county, Michigan, my conclusion was that he was not an adverse witness, but adverse to defendants. I therefore find that plaintiff entered into this contract with full knowledge of the real situation."

Notwithstanding some conflict in the testimony, the record justifies the determination of the trial judge that plaintiff before and at the time he signed his contract with the Bodi Lake Lumber Company knew that the defendants were only contract purchasers of the property involved; that in executing his contract plaintiff was not misled by any representation to the contrary, and therefore plaintiff was not entitled to rescission on the alleged ground of fraudulent misrepresentation; and in that respect decision in the circuit court must be affirmed.

The remaining question to be determined is whether or not, under this record, plaintiff is entitled to a decree for damages which he sustained by reason of the defendants having breached their contract with plaintiff. The manner in which plaintiff claims such breach occurred is indicated in the main by the facts hereinbefore recited—*i.e.*, that at the time when plaintiff was performing his part of the contract the defendants without justification, so far as plaintiff was concerned, ceased to furnish the logs at plaintiff's mill site as provided in their contract with plaintiff, and in consequence thereof plaintiff was compelled to cease operations to his damage in that he lost profits which otherwise would have accrued to him.

Concerning plaintiff's above claim of breach of contract by defendants, it should be noted that at the time plaintiff discontinued operating his sawmill there were approximately 30,000 feet of logs already delivered at the mill and ready for being sawed into lumber by plaintiff. While this amount was only sufficient for one or two days' operations, the record also discloses that something like 400,000 feet of logs had been cut and were ready for hauling a short distance to the mill. Appellees also contend that prior to the time plaintiff discontinued operating the sawmill he had breached his contract with the Bodi Lake Lumber Company wherein the contract provided: "That wages shall be paid (by plaintiff) when due as provided by law." Admittedly plaintiff did not comply with this contract provision; and even if technical compliance be considered waived in consequence of the lumber company having advanced money for plaintiff's pay roll, still it is a necessary inference from the record that at the time plaintiff discontinued operating the mill he could not and did not comply with the above contract provision; and unfortunately the partnership was also without financial means to continue meeting the pay roll for plaintiff; and it should be noted again that there was no provision in the contract requiring the partnership to advance funds needed for operating plaintiff's mill. Further, there is testimony that prior to discontinuance of operations defendants had advised plaintiff that they could not continue providing him with financial means with which to meet costs of operation.

Plaintiff's contract further provided that he was "to pile all lumber as directed by first party (Bodi Lake Lumber Company)." The record discloses that in the course of his operations plaintiff failed to comply with the above provision of the contract

and in consequence the piling of the lumber was done by the lumber company.

In view of the circumstances just above noted, appellees assert that it was plaintiff who first breached the terms of his contract with the lumber company, and therefore he is not entitled to recover damages on the theory that the contract was breached by the partnership.

"He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform." *Jones* v. *Berkey* (syllabus), 181 Mich. 472.

"In a suit to recover damages for being prevented from performing a contract, it is incumbent upon the plaintiff to make out the contract alleged in his declaration, and the burden is upon him to show performance, or, in default, that the defendant wrongfully prevented such performance." *Stahelin* v. *Sowle* (syllabus), 87 Mich. 124.

Further, our review of the record brings the following conclusion. That the termination of performance under this contract, rather than being primarily caused by failure of either party to comply with the requirements of the contract, was that neither plaintiff nor the Bodi Lake Lumber Company had the financial means with which to continue operations, and that this condition came about simultaneously with the respective parties. With this view of the record in mind, it cannot be said that plaintiff, who had the burden of proof, established his claim that failure of full performance of the contract was due to its alleged breach by the Bodi Lake Lumber Company.

While neither in his opinion nor in the decree did the trial judge review extensively the phase of the record which brought the conclusion that plaintiff was not entitled to recover damages alleged to have resulted from the lumber company's breach of the

contract, still the record convinces us that the trial court reached the right result. In so concluding we have not overlooked plaintiff's claim that his contract with the lumber company was modified by the giving of his chattel mortgage to the company, as hereinbefore noted; but insofar as that claim having any bearing upon the controlling aspects of the record in this case, we are not in accord with plaintiff's contention.

The decree entered in the circuit court is affirmed, with costs to appellees.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.