**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0166n.06

Case No. 18-1565

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LAURI ANN POOLE, | ) | |
| | ) | **FILED**<br>Apr 01, 2019<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| | ) | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) | |
| | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: MERRITT, CLAY, and ROGERS, Circuit Judges.

CLAY, Circuit Judge. Plaintiff Lauri Ann Hoch appeals from the district court's order granting in part Defendant Federal National Mortgage Association's ("Fannie Mae") motion for summary judgment and entering a declaratory judgment allowing Fannie Mae to foreclose on Plaintiff's mortgage if Plaintiff does not pay a reinstatement sum of $74,982.83. For the reasons set forth below, we **AFFIRM** the decision of the district court.

## BACKGROUND

### Factual History

On July 13, 2005, Plaintiff Lauri Ann Hoch, née Poole ("Plaintiff"), obtained a loan in the amount of $188,300.00. Plaintiff secured the loan by a mortgage on her property located at 1181 S. Osborne Road, Dansville, MI. SunTrust Mortgage, Inc. ("SunTrust") serviced the loan. SunTrust

assigned the mortgage to Fannie Mae in October 2013, and servicing of the loan was transferred to Seterus, Inc. ("Seterus") at approximately the same time.

Plaintiff became delinquent in payments on the loan in 2007, and Plaintiff and SunTrust began discussing loan modification options in 2009. On April 23, 2010, SunTrust offered a modification showing a principal balance of $251,908.92; on April 27, 2010, SunTrust offered a modification showing a principal balance of $193,776.09; and on June 4, 2010, SunTrust offered a modification showing a principal balance of $179,360.50.[1] The June 4, 2010 modification offer required Plaintiff to make monthly payments of: $610.66 from July 2010 through June 2015, at a yearly interest rate of 2%; $705.20 from July 2015 through June 2016, at a yearly interest rate of 3%; $804.62 from July 2016 through June 2017, at a yearly interest rate of 4%; and $894.89 from July 2017 through October 2048, at a yearly interest rate of 4.875%. Plaintiff accepted the June 4, 2010 modification offer, and SunTrust executed the Modification Agreement on July 26, 2010.

Despite the execution of the June 4, 2010 Modification Agreement, SunTrust did not "board the Modification into its system." (Defendant Br. at 6.)[2] Over the next year, Plaintiff made monthly payments of $1,064, an amount specified on the June 4, 2010 Modification Cover Letter. Instead of crediting the payments to Plaintiff's account, SunTrust placed the payments in a "suspense account." (R. 55-9, Customer Account Activity Statement, PageID # 604–07.) This meant that Plaintiff's loan continued to be in default, and related fees accrued. In October 2011,

---

[1] There appears to have been an error in the June 4, 2010 modification offer. The cover letter to the June 4, 2010 modification offer stated: "When [the capitalized amount of $16,714.88 is] added to your current principal balance of $179,360.50 your new balance will be $196,075.38 with a new maturity date of OCTOBER 1, 2048." (R. 53-6, Modification Cover Letter, PageID # 491.) However, the actual Modification Agreement stated that: "As of June 1, 2010, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $179,360.50, consisting of the amount(s) loaned to the Borrower by the Lender and any interest capitalized to date." (R. 55-7, Loan Modification Agreement, PageID # 592.)

[2] SunTrust determined that it had made a mistake in entering the Modification for $179,360.50, and it sent Plaintiff several new proposed modification agreements reflecting a principal balance of $193,198.46.

SunTrust applied part of the money in the suspense account to amounts owed prior to August 2009, returned the rest, and demanded a lump sum payment of $37,110.76 to bring Plaintiff's loan current. Plaintiff eventually stopped making loan payments. SunTrust issued a default letter on October 27, 2011.

Plaintiff filed for Chapter 13 bankruptcy in August 2012. That case was dismissed, and Plaintiff filed again in 2013. A new servicer, Seterus, began servicing the loan on behalf of Fannie Mae. Before dismissing the 2013 case, Plaintiff made three payments of $1,463.03 to Seterus for April, May, and June of 2014. Between July 2011 and October 2017, SunTrust and Seterus made property tax and insurance payments for the property totaling $32,738.85. Fannie Mae, through Seterus' foreclosure counsel Orlans Associates, P.C., began foreclosure by advertisement proceedings against Plaintiff in fall of 2015.

**Procedural History**

Plaintiff filed a lawsuit against Fannie Mae in Michigan state court alleging wrongful foreclosure on November 23, 2015. Fannie Mae removed the case to the federal district court on the basis of diversity jurisdiction. Fannie Mae moved to dismiss, and Plaintiff moved for leave to amend her complaint in response. The district court granted Fannie Mae's motion to dismiss, finding that the claim was unripe. However, the district court allowed Plaintiff to amend her complaint to add a claim for declaratory relief based on the June 4, 2010 Modification, the validity of which Fannie Mae denied at that point.

Plaintiff filed her First Amended Complaint on June 10, 2016. Plaintiff alleged that she and SunTrust had entered a valid loan modification on June 4, 2010, and that SunTrust breached the Modification by refusing to accept her payments. Plaintiff argued that Fannie Mae "does not have a contractual right to sell Plaintiff's Home, because its purported predecessor in interest,

SunTrust, lacked such a right through its breach of the [Modification Agreement]." (R. 25, First Amended Complaint, PageID # 295.) She therefore requested that the district court "[d]eclar[e] that [Fannie Mae] lacks legal authority to foreclose on Plaintiff's Home under Michigan's foreclosure by advertisement statute." (*Id.* at PageID # 296.) Plaintiff also requested an award of attorneys' fees and "such other and further relief as is just and equitable." (*Id.*)

Fannie Mae denied the legitimacy of the Modification Agreement in its Answer to Plaintiff's First Amended Complaint and throughout discovery. On October 16, 2017, Fannie Mae conceded the validity of the Modification and informed Plaintiff that it had cancelled the foreclosure sale.[3] Fannie Mae informed Plaintiff that it intended to file a motion for summary judgment "on the basis that Plaintiff's claim [was] now moot, or alternatively, seek[] a judgment declaring that Plaintiff has the ability to reinstate her mortgage loan by making the payments that are currently past due pursuant to the loan modification agreement, and Fannie Mae is permitted to pursue any legal and equitable remedies, including foreclosure, if those obligations are not paid." (R. 55-34, Fannie Mae Email, PageID # 841.)

On October 17, 2017, Fannie Mae filed a motion for summary judgment. Fannie Mae asked the district court to dismiss Plaintiff's declaratory judgment action as moot. Fannie Mae stated that "if the Court can afford any meaningful relief in the context of the current dispute, it is to enter a declaratory judgment enforcing the Modification, and also providing that Plaintiff shall, within a reasonable time period, make a lump sum payment to Seterus in order to bring her Loan current under the Modification, and to reinstate the Loan." (R. 53, Motion for Summary Judgment, PageID # 434.) Fannie Mae asserted that the amount Plaintiff owed to reinstate the Loan was $74,982.82. This sum was based on the calculations of Seterus employee Olivia Davis ("Davis"), which were

---

[3] Dispositive motions were due on October 17, 2017.

attached to the motion for summary judgment in an affidavit. Davis stated that she based her calculations in the affidavit on "personal knowledge obtained through [her] review of documents and other data contained in Seterus's records as they are kept in the ordinary course of business." (R. 53-4, Affidavit of Olivia Davis, PageID # 473–74.)

The district court issued an order on the Motion for Summary Judgment on April 17, 2018. The district court found that the case was not moot, because Fannie Mae did not abandon the right to foreclose the mortgage and Plaintiff sought "a declaration that Fannie Mae lacks the power to foreclose at all." (R. 62, Memorandum Order, PageID # 937–38.) The district court considered the equities of the case, stating:

> [T]he matter, at bottom, is one of equity, and the balance of equities does not tilt decidedly in either direction. On the one hand, SunTrust started the whole mess by failing to apply Hoch's payments in accordance with the LMA and eventually rejecting her payments. SunTrust's failure to comply with the validly-executed LMA thus led to Hoch's default and, ultimately, this lawsuit, causing Hoch to file two bankruptcy cases and incur attorneys['] fees along the way. Fannie Mae apparently picked up where SunTrust left off. On the other hand, Hoch has lived in her house for the past six years (or most of that time) without having made mortgage payments and without paying most of the property taxes and insurance premiums. Again the Court recognizes that any effort by Hoch to make these payments would likely have been futile in light of SunTrust's and Fannie Mae's position that Hoch was in default under the original loan terms; nonetheless, Hoch received some benefit. In addition, Hoch did not offer to escrow mortgage payments during the course of the litigation. Had Hoch done so, over $30,000 would have accumulated in escrow thus far, providing almost half of the amount required to reinstate the loan under the LMA.

(*Id.* at PageID # 939.) The district court granted in part Fannie Mae's motion for summary judgment and entered a declaratory judgment stating that Plaintiff could reinstate the mortgage by paying the $74,982,83 reinstatement amount to Seterus within six months. The declaratory judgment provided that if Plaintiff failed to pay the reinstatement amount, Fannie Mae would have the right to foreclose.

Plaintiff appealed. The parties entered a stipulation stating that Fannie Mae will not initiate foreclosure during the appeal, as long as Plaintiff makes monthly escrow deposits of $894.89 to the court.

## DISCUSSION

### Standard of Review

This Court reviews *de novo* a district court's grant of summary judgment on a declaratory judgment action. *Stryker Corp. v. Nat'l Union Fire Ins. Co.*, 681 F.3d 819, 823 (6th Cir. 2012). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that there is no such genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In considering a summary judgment motion, this Court must "consider the evidence in the light most favorable to the non-moving parties, drawing all justifiable inferences in their favor." *Payne v. Novartis Pharmaceuticals Corp.*, 767 F.3d 526, 530 (6th Cir. 2014). "The moving party must demonstrate the basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) (quotations and citation omitted) (alteration in original).

### I. The Reinstatement Payment under the Loan Modification

Under Michigan law, "[h]e who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform." *Chrysler Int'l Corp. v. Cherokee Exp. Co.*, 134 F.3d 738, 742 (6th Cir. 1998) (quoting *Ehlinger v. Bodi Lake Lumber Co.*, 36 N.W.2d 311, 316 (Mich. 1949)). A breach is "substantial" when it "has effected such a

change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *Id.* Plaintiff argues that Fannie Mae substantially breached the Modification through SunTrust's refusal to accept Plaintiff's monthly payments under the Modification. Plaintiff asserts that "Fannie Mae's substantial breach therefore curtails its contractual rights and excuses [Plaintiff's] further performance." (Plaintiff Br. at 21.) Because of the mortgagee's errors, Plaintiff asks this Court to find that she is excused from making payments for the period between the execution of the Modification Agreement and the present date.

As Plaintiff conceded before the district court, the doctrine of first substantial breach has not previously been used to invalidate a mortgage. The cases Plaintiff cites applying the doctrine of first substantial breach involve breach of contract disputes, not declaratory judgment actions to determine the parties' rights under a mortgage. *See, e.g., Chrysler*, 134 F.3d at 742 (first substantial breach doctrine applied in breach of contract case for damages involving car sales); *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 690–92 (7th Cir. 2011) (claims for damages for breach of contract and violation of the Real Estate Settlement Procedures Act); *Yacoubou v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 623, 629–30 (D. Md. 2012) (breach of contract claim for failure to honor loan modification agreement).

In *Yacoubou*, a district court recognized that a mortgagee had potentially breached a loan modification by refusing to accept payments under it. *Yacoubou*, 901 F. Supp. 2d at 629–30. However, the district court (in an earlier, unreported decision) "concluded that, in contrast to [the plaintiff's] apparent position, the refusal of his tender would not have had the effect of erasing his underlying mortgage debt to Wells Fargo. Rather, it would have had the effect of terminating the

accrual of additional interest for the period in question." *Id.* at 630; *cf. Fluegge v. Nationstar Mortg., LLC*, No. 12-cv-15500, 2015 WL 4430062, at *7 (E.D. Mich. July 20, 2015) ("Th[e] doctrine [of first substantial breach] simply does not apply here, as Nationstar has not brought an action against Fluegge for his breach—rather, Nationstar has foreclosed the Mortgage."). Therefore, we find that the doctrine of first substantial breach does not apply to this declaratory judgment case to entirely excuse Plaintiff's obligations under the mortgage.[4] The district court did not err in finding that Fannie Mae has the right to foreclose if Plaintiff does not pay the reinstatement sum.

## II.     Scope of the Declaratory Judgment

Plaintiff next contends that the district court erred by granting declaratory judgment in Fannie Mae's favor after Fannie Mae conceded the validity of the Modification Agreement and argued that Plaintiff needed to pay a reinstatement sum in order to bring her loan current. Throughout most of the litigation, Fannie Mae denied that the parties had entered into a valid loan modification. Fannie Mae reversed positions and conceded validity of the Modification on October 16, 2017. Fannie Mae then filed a motion for summary judgment, arguing in part that if the district court were to issue a declaratory judgment as requested by Plaintiff, the declaratory judgment "should declare the parties' current rights under the Modification." (R. 53, Motion for Summary Judgment, PageID # 436.) Fannie Mae requested that the district court's declaratory judgment "clarify that Fannie Mae may proceed with any and all remedies under the Note and Mortgage, as

---

[4] Plaintiff argues that the district court "impermissibly rewrote the contracts at issue" by finding that Fannie Mae has a right to foreclose if Plaintiff cannot pay the $74,982.83 reinstatement sum. (Plaintiff Br. at 25.) However, the Mortgage specifically provides for the possibility of a reinstatement amount being required if the loan falls behind. (R. 25-1, Mortgage, PageID # 305–06.) The Modification states that "[e]xcept as otherwise specifically provided by this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement." (R. 25-2, Modification Agreement, PageID # 311.) The district court did not rewrite the contract by finding that Plaintiff could be required to pay the reinstatement sum in order to avoid foreclosure.

modified (but not replaced) by the Modification, if Plaintiff fails to pay back amounts owed under the Modification and to reinstate the Loan." (*Id.* at PageID # 435.)

Plaintiff argues that it was improper for the district court to issue the declaratory judgment granting Fannie Mae's requested relief, because Fannie Mae's motion for summary judgment was not an "appropriate pleading" as required by 28 U.S.C. § 2201. Plaintiff asserts that the district court granted relief that was outside the scope of the declaratory judgment that Plaintiff had requested.

A declaratory judgment action allows a court to declare "[t]he existence or non-existence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend." Fed. R. Civ. P. 57 advisory committee's note to 1937 adoption. Declaratory judgment actions are intended to "clarify[] and settl[e] the legal relations in issue" and "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citations omitted). Plaintiff filed this action requesting a declaratory judgment that "FNMA does not have a contractual right to sell Plaintiff's home, because its purported predecessor in interest, SunTrust, lacked such a right through its breach of the [Modification Agreement]." (R. 25, First Amended Complaint, PageID # 295.) In other words, Plaintiff sought a declaratory judgment stating that the Modification was valid but unenforceable due to the mortgagee's breach—put neutrally, Plaintiff sought a declaration of the parties' rights under the Modification. Plaintiff had to be prepared for the possibility that the court would not issue a decision in her favor. That could take the form of a declaration that there had been no valid modification, or that there had been a valid modification that remained enforceable despite the purported breach.

By issuing a declaratory judgment finding that Fannie Mae retains the right to foreclose under the Modification if Plaintiff does not pay a reinstatement fee, the district court "clarif[ied] and settle[d] the legal relations in issue." *Grand Trunk W. R.R. Co.*, 746 F.2d at 326. Had the district court announced that the Modification is valid but not explained that Fannie Mae retains the right to foreclose only if Plaintiff fails to pay the reinstatement sum, the declaratory judgment would not have "afford[ed] relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* Instead, the parties would have been left without a clear statement of their rights under the Modification. Therefore, the district court did not err in granting the declaratory relief that Fannie Mae requested. And while Plaintiff asserts that the district court improperly granted declaratory relief in response to Fannie Mae's motion, Plaintiff is the party who brought this action requesting declaratory relief in the first place. The fact that the declaratory relief issued was not the outcome Plaintiff hoped for is not reason to overturn the district court's decision.

## III. Determination of the Reinstatement Sum

Finally, Plaintiff argues that the district court improperly determined the reinstatement sum of $74,982.83 based on an affidavit submitted by Olivia Davis (the "Davis affidavit") that Fannie Mae attached to its motion for summary judgment. Plaintiff asserts that the Davis affidavit contained hearsay and was inadmissible under Federal Rule of Civil Procedure 56(c)(4), which requires that an affidavit in support of a motion for summary judgment "set out facts that would be admissible in evidence." The parties dispute whether this issue was properly preserved before the district court.

In her opposition to Fannie Mae's motion for summary judgment, Plaintiff stated that Fannie Mae "has not submitted any documents that support Ms. Davis's hearsay statements." (R. 55, Brief in Opposition to Defendant's Motion for Summary Judgment, PageID # 552–53.) This

statement was Plaintiff's only reference before the district court to the Davis affidavit containing hearsay. Plaintiff never explained why she believed the Davis affidavit contained hearsay or argued that the affidavit was inadmissible on that basis. Plaintiff argued that the district court should not rely on the Davis affidavit for other reasons, but she never cited Rule 56(c)(4) or otherwise provided any argumentation that the Davis affidavit could not be considered because it contained hearsay.

In *United States v. Huntington Nat'l Bank*, we explained the requirements for a party to preserve an issue for appeal:

> At a minimum, a litigant must state the issue with sufficient clarity to give the court and opposing parties notice that it is asserting the issue. Yet notice by itself does not suffice. Otherwise, a litigant could preserve an issue merely by summarily mentioning it, and we know that conclusory allegations and perfunctory statements, unaccompanied by citations or some effort at legal argument, do not meet this standard. To preserve the argument, then, the litigant not only must identify the issue but also must provide some minimal level of argumentation in support of it.

574 F.3d 329, 332 (6th Cir. 2009) (citations omitted). Plaintiff's single reference to "hearsay statements," without more, was insufficient to preserve the argument that she now makes on appeal. Therefore, even if the Davis affidavit was inadmissible, the district court's reliance on that affidavit is not reviewable on appeal. *See Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) (finding that the district court's reliance on inadmissible affidavits included in a motion for summary judgment was not reviewable on appeal because the plaintiff did not raise the issue before the district court).

## CONCLUSION

The district court did not err in entering a declaratory judgment stating that Fannie Mae may foreclose under the Modification Agreement if Plaintiff does not pay the reinstatement amount, and Plaintiff did not preserve for appellate review the issue of whether the information contained in the Davis affidavit constituted inadmissible hearsay. We therefore **AFFIRM** the judgment of the district court.

MERRITT, Circuit Judge, Concurring. This is a case where multiple mortgage companies have engaged in conduct that most laypeople would describe as deceptive and frustrating. SunTrust made two mistakes. As we state in footnote one, the June 2010 modification offer was wrong. Then it ratified the mistake by executing the document. Second, it did not "board the Modification into its system," which is doublespeak for realizing it should not have executed. Later, Fannie Mae refused to recognize the Modification Agreement until the day before dispositive motions were due in the case below. Mortgages are common security arrangements, yet these issuers could not manage to process what they had signed. That said, I am mystified by the plaintiff's failure to pay anything—or at the very least set aside money—for so long. Even if she succeeded in enforcing the Modification, she would still owe money monthly like any other mortgagor. I agree with the majority's conclusions and highlight what the District Court said: "the balance of equities does not tilt decidedly in either direction." It may be that the plaintiff may find redress in the other suits currently pending, Nos. 1:16-cv-00405-GJQ-PJG and 1:18-cv-00767-GJQ-PJG. This dispute should have settled long ago.